**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CHICAGO TRIBUNE COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | Case No. 1:25-cv-10094-LAP |
| THE NEW YORK TIMES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | Case No. 1:25-cv-10106-LAP |

**CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...............................................................................................1

II.  BACKGROUND .................................................................................................3

     A.   Perplexity's Innovative Answer Engine ................................................3

     B.   Plaintiffs' Claims .................................................................................6

III. LEGAL STANDARD...........................................................................................8

IV.  ARGUMENT......................................................................................................9

     A.   The Complaints Do Not Plausibly Allege Direct Copyright Infringement
          By Perplexity For Answer Engine Outputs. ............................................9

     B.   Plaintiffs Fail To Allege Any Facts Under Count II For Virtually All
          Registered Copyrights.........................................................................14

     C.   The Complaints Do Not Plausibly Allege Contributory Infringement..................17

     D.   The Complaints Do Not Plausibly Allege Vicarious Copyright
          Infringement........................................................................................21

     E.   The Times Complaint Fails to Allege Viable Trademark Claims. ........................23

          1.   The Times Complaint Fails to State Viable Trademark Claims as to
               THE ATHLETIC and WIRECUTTER Marks. .........................................25

          2.   The Times Complaint Fails to State Viable Trademark Claims as to
               the Remaining Marks..................................................................28

V.   CONCLUSION.................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbey House Media, Inc. v. Apple Inc.*,
  66 F. Supp. 3d 413 (S.D.N.Y. 2014)..........................................................................................19

*Abdin v. CBS Broad., Inc.*,
  971 F.3d 57 (2d Cir. 2020)...............................................................................................9, 16

*ABKCO Music, Inc. v. Sagan*,
  50 F.4th 309 (2d Cir. 2022) .............................................................................................9, 10

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)..................................................................................................22

*Ackerman v. Pink*,
  2025 WL 716678 (S.D.N.Y. Mar. 6, 2025) ..........................................................................20

*Advance Local Media LLC v. Cohere Inc.*,
  2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025)..................................................................31, 32

*Advance Local Media LLC v. Cohere Inc.*,
  No. 25-cv-1305 (CM), Dkt. 1 ¶ 9, Dkt. 1-4  (S.D.N.Y. Feb. 13, 2025)...................................32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................9, 28

*Bus. Casual Holdings, LLC v. YouTube LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ...................................................................13, 22

*BWP Media USA Inc. v. Polyvore, Inc.*,
  922 F.3d 42 (2d Cir. 2019)....................................................................................................10

*BWP Media USA, Inc. v. T&S Software Assocs., Inc.*,
  852 F.3d 436 (5th Cir. 2017) ..................................................................................................9

*Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008)...............................................................................2, 10, 11, 13

*CDC Newburgh Inc. v. STM Bags, LLC*,
  692 F. Supp. 3d 205 (S.D.N.Y. 2023)....................................................................................27

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020)....................................................................................31

*Chavez v. British Broadcasting Corp.*,
2019 WL 2250446 (S.D.N.Y. May 23, 2019) ........................................................31

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ..............................................................................10

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC.*,
844 F.3d 79 (2d Cir. 2016)..................................................................................10

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991).............................................................................................1

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019).........................................................................................15

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021)...................................................................................8

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)............................................................................20

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016)...............................................................21

*Hartmann v. Apple, Inc.*,
2021 WL 4267820 (S.D.N.Y. Sept. 20, 2021)...................................................18

*Hartmann v. Google LLC*,
2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ..................................................18, 22

*Hines v. Roc-A-Fella Recs., LLC*,
2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020).....................................................14

*Hunley v. Instagram, LLC*,
73 F.4th 1060 (9th Cir. 2023) ..............................................................................9

*In re OpenAI, Inc. Copyright Infringement Litig.*,
2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ....................................................27

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*,
823 F.3d 153 (2d Cir. 2016)...........................................................................30, 31

*J&J Sports Prods., Inc. v. Espinal*,
2020 WL 2747981 (E.D.N.Y. May 26, 2020) ....................................................22

*Kaplan, Inc. v. Yun*,
16 F. Supp. 3d 341 (S.D.N.Y. 2014)..................................................................26

*Klauber Bros., Inc. v. QVC, Inc.*,
　2020 WL 7029088 (S.D.N.Y. Nov. 30, 2020)......................................................................21

*Larball Publ'g Co., Inc. v. Lipa*,
　2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023)................................................................15, 17

*Livnat v. Lavi*,
　1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)............................................................................17

*Lixenberg v. Complex Media, Inc.*,
　2023 WL 144663 (S.D.N.Y. Jan. 10, 2023) .......................................................................18

*Long v. Dorset*,
　854 F. App'x 861 (9th Cir. 2021) .......................................................................................11

*McGucken v. Newsweek LLC*,
　464 F. Supp. 3d 594 (S.D.N.Y. 2020).................................................................................23

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
　545 U.S. 913 (2005).............................................................................................................18

*New York Times Co. v. Microsoft Corp.*,
　777 F. Supp. 3d 283 (S.D.N.Y. 2025)......................................................................... *passim*

*Perfect 10, Inc. v. Giganews, Inc.*,
　847 F.3d 657 (9th Cir. 2017) ..............................................................................................10

*Piuggi v. Good for You Prods. LLC*,
　739 F. Supp. 3d 143 (S.D.N.Y. 2024)...........................................................................14, 15

*Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*,
　760 F. Supp. 2d 384 (S.D.N.Y. 2011).................................................................................27

*Quiroga v. Fall River Music, Inc.*,
　1998 WL 851574 (S.D.N.Y. Dec. 7, 1998) ...................................................................17, 18

*Ripple Analytics Inc. v. People Center, Inc.*,
　153 F. 4th 263 (2d Cir. 2025) ........................................................................................26, 27

*Shull v. TBTF Prods. Inc.*,
　2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019).......................................................................16

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
　118 F.3d 955 (2d Cir. 1997)................................................................................................22

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
　93 F.4th 222 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2844 (2025)....................................22

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)..................................................................................9

*Stevens v. Tomlin*,
    2023 WL 5486247 (E.D.N.Y. Aug. 24, 2023)........................................................16

*Stross v. Twitter, Inc.*,
    2022 WL 1843142 (C.D. Cal. Feb. 28, 2022).........................................................11

*STX, Inc. v. Bauer USA, Inc.*,
    1997 WL 337578 (N.D. Cal. June 5, 1997) ...........................................................27

*Taboola, Inc v. Ezoic Inc.*,
    2020 WL 3965308 (S.D.N.Y. Feb. 21, 2020)..........................................................9

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)..............................................................................20, 31

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .............................................................................10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012)................................................................................20

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
    403 F.Supp.3d 361 (S.D.N.Y. 2019)...................................................................31

*White v. DistroKid, LLC*,
    766 F. Supp. 3d 451 (S.D.N.Y. 2025)............................................................ *passim*

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.
    Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014)...............................14, 18, 21

*Zappa v. Rykodisc, Inc.*,
    819 F. Supp. 2d 307 (S.D.N.Y. 2011).................................................................9

v

## STATUTES

15 U.S.C.

    § 43(a) ...........................................................................................24, 26, 27, 32

    § 43(c) ...........................................................................................24, 25, 27, 33

    § 1114...................................................................................................26, 33

    § 1114(1)...............................................................................................24, 25

    § 1125(a) ..............................................................................................*passim*

    § 1125(c) .......................................................................................24, 25, 27, 33

    § 1125(c)(1) ...........................................................................................25, 27

    § 1125(c)(2)(A).............................................................................................27

    § 1125(c)(3)(A).............................................................................................33

    § 1125(c)(3)(B-C) ........................................................................................33

17 U.S.C.

    § 411(a) ........................................................................................................15

    § 512.............................................................................................................20

## RULES

Rule 12(b)(6)...............................................................................................8, 26

## I.    INTRODUCTION

> "The most fundamental axiom of copyright law is that no author
> may copyright his ideas or the facts he narrates."
>
> *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45
> (1991).[1]

Through these lawsuits, The New York Times and Chicago Tribune seek to disrupt Perplexity's groundbreaking generative AI technology, which provides the public with efficient access to ideas and facts that no one owns.  That technology—the "answer engine"—connects large language models ("LLMs") to the vast ocean of human knowledge and information dispersed across the internet, of which (crediting the Complaints' allegations) Times and Tribune content is a minuscule part.  When a user enters a query into the answer engine—for instance, "How many bedrooms are in the White House?"—the answer engine searches for, acquires, and synthesizes information from a wide range of relevant sources.  On a full record, Plaintiffs' attempts to stop this novel technology by monopolizing facts will founder on bedrock principles of intellectual property law that have consistently permitted innovative technologies like Perplexity to exist.

Perplexity's Motions, however, focus on claims that cannot even progress past the pleading stage.  The Complaints fail to state a claim that Perplexity is either directly liable (Count II) or secondarily liable (Count III) for copyright infringement based on allegedly infringing answers automatically generated in response to user questions.  And Counts IV and V of The New York Times' Complaint fail to state any viable trademark claims against Perplexity.

As to Count II, Perplexity cannot be held directly liable because the Complaints are devoid of any allegations of volitional conduct on Perplexity's part.  This argument was not before Judge Stein in the OpenAI case.  Direct liability for copyright infringement requires proof of a volitional

---

[1] Unless otherwise noted, internal citations are omitted.

1

act by the defendant.  Plaintiffs allege that, when a Perplexity user asks the answer engine to specifically obtain information from Plaintiffs (e.g., "[p]lease provide a detailed summary of this article"), Perplexity itself is ***directly*** liable for the resulting "verbatim" or "near-verbatim" copies of Plaintiffs' works available on the internet.  *See, e.g.*, No. 25-cv-10094-LAP, Dkt. 1 ("Tribune Compl.") ¶ 100; No. 25-cv-10106-LAP, Dkt. 37 ("Times Compl.") ¶ 128.  The law forecloses a direct infringement claim under this theory.  In *Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"), the Second Circuit held that it is the end user—and *not* the provider of automated technology—who engages in volitional conduct when the user selects copyrighted content for copying using that technology.  *Id.* at 132.  That is true even where the technology provider determines the universe of materials available for copying, and even when the technology is specifically designed to enable such copying.  *Id.* at 132-33.  The allegations related to Perplexity here are even more remote, as there is no allegation that Perplexity exists only to provide perfect copies of Times or Tribune content. (It does not.)  Moreover, even if the Court were to find the allegations sufficiently state a direct infringement claim against Perplexity as opposed to third-party users, Plaintiffs failed to plead facts alleging infringing outputs for nearly every registered copyright identified in the Complaints.  At a minimum, the Count II claims for those works should be dismissed.

Count III, for contributory and vicarious copyright infringement, at least invokes the correct legal frameworks for evaluating the conduct in question.  But those claims must also be dismissed for failure to state a claim.  The claims of contributory infringement fail because Plaintiffs have not plausibly alleged that Perplexity knew that its technology was being used by any users to generate specific and identifiable copies of individual works owned by Plaintiffs.  Plaintiffs do not assert that any third parties are, in fact, using Perplexity's technology this way.

The claims of vicarious copyright infringement must be dismissed because Plaintiffs include no allegations whatsoever—not even an otherwise insufficient recitation of the legal standard—that Perplexity has a direct financial interest in any purported infringement of Plaintiffs' works. Judge Stein did not pass on this requirement in the OpenAI case either and it also requires dismissal.

Counts IV and V of the Times Complaint rely, in part, on marks that Plaintiff The New York Times Company ("the Times") does not own, and rely on allegations of fame (for dilution purposes) and of "use" of the Times' marks by Perplexity that are skeletal and insufficient. The Times' pleading does not contain any allegations or examples of any uses by Perplexity of any marks owned by the Plaintiff that are not nominative fair uses, and it is The Times' burden to do so under the law of this Circuit. The Times' pleading does not satisfy that burden.

Trimming these cases to remove Plaintiffs' legally deficient Counts II and III, and the Times' Counts IV and V, will set the boundaries for the parties' dispute on Plaintiffs' remaining claims, including on the core issue of fair use at the heart of these and other pending AI cases. The Court should grant Perplexity's Motions and dismiss Counts II and III of both Complaints, and Counts IV and V of the Times Complaint, for failure to state a claim.

## II.    BACKGROUND

### A.    Perplexity's Innovative Answer Engine

Perplexity is an AI company founded in San Francisco, California in 2022. It created a novel and groundbreaking AI tool known as an "answer engine." *See* Tribune Compl. ¶ 2; Times Compl. ¶ 2.[2]  "[W]hen [a user] ask[s] Perplexity a question, it uses advanced AI to search the internet in real-time, gathering insights from top-tier sources. It then distills this information into a clear, concise summary … in an easy-to-understand, conversational tone." Tribune Compl. ¶ 2;

---

[2] All emphasis is added unless noted otherwise.

3

Times Compl. ¶ 2.   This process involves "interpret[ing] [the user's] question" and "then 'search[ing] the internet, gathering information from authoritative sources like articles, websites, and journals.'"  Tribune Compl. ¶ 2; Times Compl. ¶ 2.  Users rely on Perplexity's AI tool to obtain up-to-date, succinct, factual answers to a nearly limitless number of questions.  *See* Tribune Compl. ¶ 52; Times Compl. ¶ 70.  For example, anyone can ask Perplexity: "How many Vermeer paintings currently exist in the world?"  And it will respond with an answer, as well as with links to relevant sources on the internet and suggested related questions.

How many Vermeer paintings currently exist in the world?

Art historians generally agree that there are about 34–35 surviving paintings securely attributed to Johannes Vermeer, with total "known Vermeers" often quoted in the mid-30s. `p55 +4`

**Why the numbers vary**

- Many museums and scholars now state that 34 paintings are firmly accepted as by Vermeer. `p55 +3`

- Some institutions and writers say "about 35" surviving works, reflecting one or two still-debated attributions. `essentialvermeer +2`

- A few guides and popular accounts still refer to 36–37 "Vermeers," counting paintings that some experts now label "attributed to Vermeer" or possibly by a studio assistant. `theartnewspaper +2`

**Missing or disputed works**

- Archival records suggest Vermeer painted fewer than 50 works in total, so several are thought lost or untraced. `essentialvermeer +3`

- Six or more "missing Vermeers" are known only from documents or from works stolen or destroyed, such as the still-missing "The Concert" taken from the Isabella Stewart Gardner Museum in 1990. `vermeerdelft +1`

 10 sources

4

**Follow-ups**

↳ Which museums hold the most Vermeer paintings

↳ What are Vermeer most famous paintings

↳ Where are Vermeer paintings privately owned

↳ Why are there so few surviving Vermeer works

↳ What are the three dated Vermeer paintings

As alleged in the Complaint, Perplexity's answer engine uses AI technology to cull facts in real time from numerous sources using a process called retrieval-augmented generation ("RAG"). *See* Tribune Compl. ¶¶ 4, 40-48; Times Compl. ¶¶ 4, 58-66. It then condenses and summarizes those facts using an LLM, which automatically generates an easy-to-understand, natural-language response, incorporating facts and ideas gathered from sources on the internet. *See* Tribune Compl. ¶ 40; Times Compl. ¶ 58. Users are free to click through and read the underlying sources contributing information to any answer, which are presented as links within the answer. *See, e.g.*, Tribune Compl. ¶ 61; Times Compl. ¶ 80. Perplexity's answer engine is ***not*** designed to simply regurgitate or reproduce verbatim expressive content from any given source in the answers it generates; none of the Complaints' allegations suggests otherwise. *See, e.g.*, Tribune Compl. ¶ 4; Times Compl. ¶ 4 (alleging only that "Perplexity... repackages the original content in written responses to users").

The processes described above are fully automated. As Plaintiffs allege, the "LLMs ... upon which Perplexity's AI products are built" can "generate answers to questions about information that is included in their training data" and are "capable of taking documents as input, then summarizing or answering questions about those documents" because they "use algorithms to weigh the relevance of different parts of the input data" provided by users. Tribune Compl.

¶¶ 37-38; Times Compl. ¶¶ 55-56. "The quality of the output depends on the size of the model, the diversity of training data, and the specific architecture and training techniques used," not on any post-query intervention by anyone. Tribune Compl. ¶ 38; Times Compl. ¶ 56.

Once trained, "LLMs may also be deployed in conjunction with a technique called 'retrieval-augmented generation' ('RAG')," which is a technique or process that involves connecting an LLM to external sources of information, such as live search results, to improve the quality of its outputs. *See* Tribune Compl. ¶¶ 40-41; Times Compl. ¶¶ 58-59. Plaintiffs allege that Perplexity uses RAG, or "grounding," to answer user prompts. *See* Tribune Compl. ¶¶ 40-41; Times Compl. ¶¶ 58-59. They claim that, when a user submits a prompt to Perplexity's answer engine, it starts the following automated process: Perplexity's AI products (1) "receive an input, such as a prompt;" (2) "retrieve relevant content related to the input prior to generating a response;" (3) "combine the original input with the retrieved documents in order to provide context;" and (4) "provide the combined data to an LLM, which generates a human-like language response." Tribune Compl. ¶ 40; Times Compl. ¶ 58.

Plaintiffs never identify any act by any person other than the Perplexity user from the prompt to the ensuing output. Instead, as Plaintiffs allege, the user presses the button and Perplexity's answer engine automatically executes.

**B.    Plaintiffs' Claims**

Plaintiffs are news organizations that publish digital and print products, including the *Chicago Tribune* and *The New York Times* newspapers and websites. Tribune Compl. ¶ 7; Times Compl. ¶ 7. The Tribune alleges that its newspaper's "impact on national and international news has been significant," Tribune Compl. ¶ 24, and the Times alleges that its journalism is "deeply impactful." Times Compl. ¶ 28. Both claim to provide journalism "in the public interest" that

6

combats "misinformation" by allowing "the public to sort fact from fiction."  *See* Tribune Compl. ¶¶ 29-30; Times Compl. ¶¶ 46-47.

In December 2025, Plaintiffs sued Perplexity for copyright and trademark infringement, bringing the same five Counts in two separate Complaints.  Three Counts are copyright claims.  In Count I in both Complaints, for direct copyright infringement, Plaintiffs attack Perplexity's use of copyrighted works as "inputs" for its answer engine, alleging that "Perplexity copies the[ir] content by crawling and scraping the[ir] website[s] ... with its own crawlers like PerplexityBot and Perplexity-User, as well as those of third parties," and through "accessing and using third-party indices and databases comprised of scraped ... content," in order "to populate Perplexity's 'AI-First' search index to power its GenAI Products."  Tribune Compl. ¶¶ 50-51, 88-90; Times Compl. ¶¶ 68-69, 116-118.  These so-called "input" counts, while disputed by Perplexity, are not the subject of Perplexity's Motions.  Nor are the Tribune's Count IV and Count V claims for trademark violations, which Perplexity also disputes.

Perplexity challenges Count II in both Complaints, also for direct copyright infringement. Plaintiffs allege that Perplexity directly infringed their copyrights when "outputs or 'answers' to user queries contain and/or are derived from the[ir] copyrighted content."  Tribune Compl. ¶ 100; Times Compl. ¶ 128.  These claims rest on answers allegedly containing "verbatim or near-verbatim reproductions" of Plaintiffs' works.  Tribune Compl. ¶ 100; Times Compl. ¶ 128.  The Complaints contain a handful of such examples—but, critically, do not allege that similar outputs have been generated for the overwhelming majority of the asserted works.  For example, the Tribune alleges that the automated reproduction of a *Chicago Tribune* article in response to a user prompt (likely provided by the Tribune itself or its attorneys) asking Perplexity's Sonar API "to provide the contents" of a specific *Tribune* article, is direct infringement ***by Perplexity***, not the

prompter who specifically requested that Sonar API obtain Plaintiff's content. *See* Tribune Compl. ¶¶ 63-64, 67-70. The Times similarly alleges the automated reproduction of a *New York Times* article in response to a user prompt (again, likely from the Times or its counsel) asking the Sonar API "to provide the contents" of a specific *Times* article is direct infringement by Perplexity, not the prompter. *See* Times Compl. ¶¶ 86-87, 89-95. Importantly, the Complaints allege no intervening volitional act by any human, much less by Perplexity the company.

Perplexity also challenges Count III in both Complaints, asserting secondary liability for copyright infringement (contributory and vicarious infringement). Plaintiffs allege "[i]n the alternative" that Perplexity is "secondarily liable" for copyright infringement allegedly committed by Perplexity's end-users when they obtained infringing content from Perplexity. Tribune Compl. ¶ 106; Times Compl. ¶ 134. In other words, these claims also rest on allegations of infringing *outputs*, not the use of copyrighted material as inputs to the answer engine. With respect to Perplexity's knowledge of any user infringement (a requirement of contributory infringement), Plaintiffs allege only that "Perplexity knows that its RAG process responds to users with outputs that infringe the[ir] works." Tribune Compl. ¶ 108; Times Compl. ¶ 136. The Complaints contain no allegations that describe any direct financial benefit Perplexity receives from any user infringement (a requirement of vicarious infringement).

Finally, Perplexity challenges The Times's three Lanham Act-based claims in Counts IV and V, which are deficient for reasons discussed in Section IV.E, below. While the Tribune also asserts similar Counts IV and V, they are not at issue in Perplexity's Motions.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc). This pleading "standard

8

'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[]... will not do.'" *Taboola, Inc v. Ezoic Inc.*, 2020 WL 3965308, at \*6 (S.D.N.Y. Feb. 21, 2020).  While the Court must draw all reasonable inferences in Plaintiffs' favor and accept all nonconclusory allegations of fact as true, the Court need not credit speculative inferences, bald assertions, or conclusions of law.  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  Accordingly, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    The Complaints Do Not Plausibly Allege Direct Copyright Infringement By Perplexity For Answer Engine Outputs.

"To establish a claim of copyright infringement," Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020).  The second prong—copying—requires proof that the defendant engaged in "'volitional conduct' that 'causes' the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (quoting *Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011)); *see also Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074 (9th Cir. 2023) ("[E]very circuit to address this issue has adopted some version of ... the volitional-conduct requirement.") (quoting *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 440 (5th Cir. 2017)).  To adequately allege volitional conduct, "[s]omething more must be shown than mere ownership of [platforms] used by others to make illegal copies." *Lopez v. Bonanza.com*, Inc., 2019 WL 5199431, at \*22 (S.D.N.Y. Sept. 30, 2019) (Preska, J.) (granting motion to dismiss for failure to allege volitional conduct).

9

The "prerequisite" of volitional conduct "takes on greater importance in cases involving automated systems." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019). Services that automatically make unlawful copies only at a user's request cannot be held liable for direct infringement. *See Cablevision*, 536 F.3d at 130-33 (finding no volitional conduct where system automatically adhered to a user's request). Systems that do the same *without* a user request can be held directly liable. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC.*, 844 F.3d 79, 96 (2d Cir. 2016) (finding volitional conduct where system retrieved copyrighted material *without* a user request). "[W]here a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will *not* establish volitional conduct." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (explaining that direct infringement requires "something more ... than mere ownership of a machine used by others to make illegal copies"); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("[I]nfringement of the reproduction right requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying.") (emphasis in original). Simply put, "direct liability attaches only to 'the person who actually presses the button.'" *ABKCO Music, Inc.*, 50 F.4th at 321-22 (quoting *Cablevision*, 536 F.3d at 131).

To sufficiently allege volitional conduct, "[t]here must be actual infringing conduct with a nexus sufficiently close and *causal* to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 63 (2d Cir. 2019) (emphasis in original) (Newman, J., concurring) (quoting *CoStar*, 373 F.3d at 550). A plaintiff fails to state a claim for direct infringement if it does not assert that "the distribution [by the defendant] of the copyrighted material did not happen

10

automatically" or that the defendant "instigated any copying, storage, or distribution." *Long v. Dorset*, 854 F. App'x 861, 863-64 (9th Cir. 2021) (cleaned up) (affirming dismissal of direct copyright infringement claim where there were no allegations of volitional conduct); *see also Stross v. Twitter, Inc.*, 2022 WL 1843142, *2-4 (C.D. Cal. Feb. 28, 2022) (dismissing direct infringement claim for failure to allege defendant's conduct was not automated).

*Cablevision* is on point.  Cablevision was a cable company that aggregated television programming from broadcast and cable channels.  536 F.3d at 124.  It created a remote digital video recorder ("DVR") system, a "complex system requiring numerous computers, processes, networks of cables, and facilities staffed by [Cablevision] personnel twenty-four hours a day and seven days a week."  *Id.* at 125.  Cablevision's system allowed a customer to record programming for later viewing, and those recordings were centrally stored at Cablevision facilities.  *Id.*  The plaintiffs, owners of television programming, sued Cablevision alleging that it was *directly* liable for the copies of their programming made using the remote DVR system.  *Id.*  The Second Circuit rejected that claim, finding that Cablevision's customers—but not Cablevision—engaged in the relevant volitional conduct.  *Id.* at 133.  The Court reasoned that, although Cablevision had "unfettered discretion in selecting the programming that it would make available for recording," those acts of selection were not "sufficiently proximate to the copying to displace the customer as the person who 'makes' the copies." *Id.* at 132.  Rather, direct liability fell only on the user because the copies at issue were "made automatically upon [a] customer's command." *Id.* at 131.

The same result follows here.  Plaintiffs each bring two counts of direct infringement against Perplexity.  Count I in both Complaints, which is *not* the subject of Perplexity's Motions, is based on Perplexity's alleged own—i.e., volitional—acts with respect to using Plaintiffs' works as **inputs** to develop its answer engine.  Count II is more narrowly targeted at the **outputs** of alleged

11

copies of Plaintiffs' works automatically generated at users' direction when they press the button in the answer engine, requesting copies of those specific works. *See* Tribune Compl. ¶ 100; Times Compl. ¶ 128. There is no allegation that Count II involves anything other than an automated response to a user query.

Plaintiffs allege that the outputs provided by Perplexity's answer engine infringe because they "often contain full or partial verbatim reproductions" of Plaintiffs' copyrighted articles. Tribune Compl. ¶ 57; *see also* Times Compl. ¶ 76 (alleging that outputs "often contain verbatim reproductions of The Times's copyrighted articles"). But the verbatim or near-verbatim outputs that Plaintiffs allege are the direct result of the specific prompts entered by the user, not of any volitional conduct by Perplexity. Plaintiffs allege that outputs contain "verbatim reproductions of the[ir] copyrighted articles, particularly when a user asks a question about what the[y] ha[ve] reported." Tribune Compl. ¶ 57; Times Compl. ¶ 76. And the only instances of alleged infringement Plaintiffs identify are outputs generated "***in response to*** users' [in this case, Plaintiffs'] prompts." *See* Tribune Compl. ¶ 74; *see id.* ¶ 72 (alleging "Perplexity's 'AI-First' Search API will produce verbatim copies ... in response to search queries from users"); *see also* Times Compl. ¶¶ 100, 103 (same).

Plaintiffs never allege any non-automated act by anyone other than the Perplexity user (here, likely the Plaintiffs themselves) from the time of the prompt to the ensuing output. They press the button, and the Perplexity answer engine automatically executes. Perplexity, by developing an AI tool that (as alleged) is able to automatically fetch and provide specific content in response to user requests based on its pre-configuration and access to materials available on the internet, engages in no more volitional conduct than Cablevision did when it curated programming available for copying, and provided "access to a system that automatically produces copies [of that

12

content] on command." *Cablevision*, 536 F.3d at 132. Such conduct is, as a matter of law, insufficient to state a claim for direct infringement against Perplexity. *Id.*

The specific examples of allegedly infringing output pleaded in the Complaints confirm that Perplexity cannot be directly liable. Plaintiffs describe, and include screenshots of, prompts engineered (by Plaintiffs) to generate outputs that allegedly infringe their copyrights. *See* Tribune Compl. ¶¶ 61-64, 67-72; Times Compl. ¶¶ 80-85, 87-95, 98, 100. It is this highly atypical, litigation-driven "user" behavior that is the "proximate cause" of any allegedly infringing copies in the outputs, not Perplexity's provision of a general-purpose AI tool. *See, e.g.*, Tribune Compl. ¶ 61 (describing response to the Tribune's prompt "[p]lease provide the first five paragraphs"); *id.* ¶ 64 (describing response to the Tribune's prompt "to provide the contents of [a specific] Chicago Tribune article"); *id.* ¶ 67 (same); *id.* ¶ 68 (same); *id.* ¶ 69 (same); *id.* ¶ 70 (same); *id.* ¶ 71 (describing response to Plaintiff's prompt "[p]lease provide a detailed summary of this article"); *id.* ¶ 72 (alleging that output returned verbatim copy "in response to a query that includes the title of [a specific Tribune] article"); Times Compl. ¶ 84 (describing response to the Times's prompt, "[w]hat are the first five paragraphs"); *id.* ¶ 87 (describing response to the Times's prompt "to provide the contents of [a specific Times] article"); *id.* ¶ 89 (same); *id.* ¶ 91 (same); *id.* ¶ 93 (same); *id.* ¶ 95 (same); *id.* ¶ 98 (describing response to the Times's prompt, "[p]rovide a detailed summary of the entire article"); *id.* ¶ 100 (alleging that output returned verbatim copy "in response to a query that includes the title of [a specific Times] article").

Because Perplexity did not ***cause*** the outputs in response to those user prompts, it cannot be held directly liable for them. *See, e.g.*, *Bus. Casual Holdings, LLC v. YouTube LLC*, 2022 WL 837596, at \*3 (S.D.N.Y. Mar. 21, 2022) (distinguishing passive from active action to hold that a plaintiff must allege the platform played "some 'deliberate role' in the alleged infringement"); *see*

*also Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (finding no volitional conduct where there was "no dispute that any reproduction, display or transmission of the Plaintiff's images by or through the KODAK Gallery website is an automated process with no human intervention by any employee of the [] Defendants"), *aff'd sub nom. Wolk v. Photobucket.com, Inc*., 569 F. App'x 51 (2d Cir. 2014). Count II in both Complaints should be dismissed.

**B.      Plaintiffs Fail To Allege Any Facts Under Count II For Virtually All Registered Copyrights.**

"To satisfy the second element" of a direct (or indirect) copyright infringement claim, "a plaintiff must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 157 (S.D.N.Y. 2024) (cleaned up). The latter requires pleading "facts regarding how the [works] are substantially similar," which requires "identifying with some degree of specificity how Defendant['s] works are substantially similar to [their] own." *Id.* at 162.

Courts routinely reject copyright claims at the motion to dismiss stage when they are based on conclusory generalizations of infringement instead of on comparisons of the asserted and accused works. For example, in *Adams v. Warner Bros. Pictures Network*, the court held that the plaintiff failed to state a claim by failing to specify "'by what acts' the defendant infringed the copyright" and thus did not "demonstrate how defendants infringed on his copyright by producing the films [at issue]." 2005 WL 3113425, at \*2 (E.D.N.Y. Nov. 22, 2005); *see also Hines v. Roc-A-Fella Recs., LLC*, 2020 WL 1888832, at \*3-4 (S.D.N.Y. Apr. 16, 2020) (holding that "to plead substantial similarity, a plaintiff must specify which aspects of the offending work allegedly infringed Plaintiff's work [and that] [t]he failure to do so is fatal, [] because the plaintiff has the

14

burden of ... identifying with some degree of specificity how the defendant's works are substantially similar to her own") (cleaned up).  Similarly, the court in *Evans v. NBCUniversal Media, LLC* dismissed copyright infringement claims because the plaintiff did "not allege any specific details about the parties' works" and, instead, offered only "general, conclusory allegations" about the alleged infringement.  2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021). And where, as here, a plaintiff "alleges infringement of multiple distinct works, the plaintiff must specify exactly which works were infringed and *plead the elements of infringement as to each*." *Larball Publ'g Co., Inc. v. Lipa*, 2023 WL 5050951, at *6 (S.D.N.Y. Aug. 8, 2023).

Plaintiffs did not plead any facts to support a claim of infringement in Perplexity's answer engine outputs for any of the works included in 3,234 of the 3,240 registrations listed in Exhibit A to the Tribune Complaint—99.8% of the asserted copyrights—and for all but five of the "millions" of the copyrighted works the Times alleges Perplexity infringed.  *See* Tribune Dkt. 1-1;[3] Times Compl. ¶ 5; *see also* Dkts. 37-1–37-177 (dividing the Times's asserted works into 177 separate files, each thousands of pages long).  Plaintiffs address only ***eleven*** of their asserted works (six Tribune works and five Times works) with any specificity.  Tribune Compl. ¶¶ 64, 67-70, 72; Times Compl. ¶¶ 87-96.[4]  As to the remaining works, the Complaints do not identify any Perplexity outputs that "are [allegedly] substantially similar." *Piuggi*, 739 F. Supp. 3d at 162.  That is a fatal

---

[3] These 3,234 Tribune registrations include all registrations listed in Exhibit A, *except* for TX0009386276, TX0009202424, TX0006511609, TX0008180683, TX0008667980, and TX0008473142. *See* Tribune Compl. ¶¶ 64, 67-70, 72.

[4] Although Plaintiffs appear to assert that Perplexity infringed their copyrighted works with respect to two additional Tribune articles (*see* Tribune Compl. ¶¶ 61-62, 71) and five additional Times articles (Times Compl. ¶¶ 80, 82, 84, 98, 100), Plaintiffs fail to identify any registered copyright for these works.  The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made."  17 U.S.C. § 411(a).  Plaintiffs must register these works before suing Perplexity. *See Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019).  Thus, no copyright violation has been properly pleaded for these seven articles.

15

flaw because, to assess whether works are "substantially similar," the Court must *compare* them—which cannot be done in the absence of allegations identifying the accused outputs. 4 Nimmer on Copyright § 13D.06 ("[T]he factfinder compares the two works in suit to examine their similarities—the presence of sufficient similarities between them allows the inference of factual copying, whereas the absence of sufficient similarities allows the opposite inference."); *Abdin*, 971 F.3d at 67-74 (affirming dismissal of copyright claim after detailed comparison of works to determine whether a "substantial similarity" existed); *Shull v. TBTF Prods. Inc.*, 2019 WL 5287923, at *6-10 (S.D.N.Y. Oct. 4, 2019) (similar).

This is no mere technicality about the *degree* of notice (or lack thereof) provided by the Complaints. Plaintiffs fail to allege, *even in an inadequate conclusory manner*, that any Perplexity user caused Perplexity's answer engine to generate any output that infringed any other of the millions of asserted works. The sum total of Plaintiffs' allegations is that the eleven "examples of verbatim or otherwise substantially similar or substitutive outputs" that they identified "create a reasonable inference that Perplexity is generating massive amounts of such outputs in response to users' prompts, from all or virtually all of [Plaintiffs'] valuable, copyrighted works." Tribune Compl. ¶ 74; *see also* Times Compl. ¶ 103 (similar); *compare* Tribune Compl. ¶ 74 to ¶¶ 88, 97 (alleging that Perplexity "copied as many of the Chicago Tribune's articles and content that it has been able to access … *includ[ing] content covered by the registrations listed at Exhibit A*" as "*inputs*"); *compare also* Times Compl. ¶ 103 to ¶¶ 116, 125 (same). Not so. That Plaintiffs' counsel (after an undisclosed number of attempts) were purportedly able to elicit fewer than a dozen allegedly substantially similar outputs from the answer engine does not provide a reasonable basis for concluding that ordinary Perplexity users did the same with respect to the millions of other asserted works. *See Stevens v. Tomlin*, 2023 WL 5486247, at *2 (E.D.N.Y. Aug.

16

24, 2023) ("[A] plaintiff suing for copyright infringement may not rest on bare-bones allegations that infringement occurred.  Rather, [he] must identify the 'specific original work [that] is the subject of the claim' as well as 'by what acts' the defendant infringed the copyright."); *cf. Larball Publ'g Co.*, 2023 WL 5050951, at *7, 14 (denying motion to dismiss where the plaintiffs "set forth facts pertaining to each work's allegedly-infringed components" and "provide[d] side-by-side comparisons of each work's sheet music").

### C.    The Complaints Do Not Plausibly Allege Contributory Infringement.

Plaintiffs' claims for contributory infringement should be dismissed because they fail to plausibly allege that Perplexity knew of any output that infringed Plaintiffs' works, let alone that Perplexity induced or contributed to it.  "To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'" *Lopez*, 2019 WL 5199431, at *24.  "An allegation that a defendant 'merely provid[ed] the means to accomplish an infringing activity' is insufficient to establish a claim for contributory infringement."  *Id.* (quoting *Livnat v. Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998)); *see also*, *e.g.*, *Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998) ("A mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct would not even be enough to survive a motion to dismiss").  Rather, the alleged "contributory infringer must have acted in concert with the direct infringer." *Lopez*, 2019 WL 5199431, at *24.

"In addition to establishing a defendant's substantial participation, the plaintiff must also demonstrate the defendant's knowledge of the infringing activity."  *Id.* "[O]ne who furnishes a copyrighted work to another but is innocent of any knowledge of the other party's intended illegitimate use will not be liable."  *Id.*  Thus, a plaintiff must allege "actual or constructive knowledge 'of specific and identifiable infringements of individual items,' not a 'general

17

awareness that there are infringements.'"  *Id.* at \*25 (quoting *Wolk*, 840 F. Supp. 2d at 751). Accordingly, "allegations of generalized knowledge, not specific to the copyrights at issue, are insufficient to state a claim."  *Hartmann v. Google LLC*, 2022 WL 684137, at \*7 (S.D.N.Y. Mar. 8, 2022).

Plaintiffs offer exactly such "allegations of generalized knowledge."  At most, Plaintiffs allege that "Perplexity knows that its RAG process responds to users with outputs that infringe the[ir] works," and that Perplexity purportedly provides "a RAG process designed to foster the infringement of the[ir] works."  Tribune Compl. ¶ 108; Times Compl. ¶ 136.  But that is impermissibly conclusory and insufficient to state a claim. *See Hartmann v. Apple, Inc.*, 2021 WL 4267820, at \*7 (S.D.N.Y. Sept. 20, 2021) (dismissing contributory copyright infringement claim where "allegations [were] too conclusory to establish that Apple had reason to know that users of the iTunes Store were infringing [plaintiff's] rights to *After the Rain* and *Austin Powers*"); *Lixenberg v. Complex Media, Inc.*, 2023 WL 144663, at \*3 (S.D.N.Y. Jan. 10, 2023) (dismissing contributory copyright infringement claim pled "in conclusory fashion" without "identify[ing] any third party who directly infringed the Subject Photograph" or "any factual support regarding Defendant's knowledge of the infringing activity").

Apart from the conclusory nature of these allegations, Plaintiffs cannot satisfy their obligation to plead knowledge merely by alleging that Perplexity's technology is generally capable of creating an infringing output.  As the Supreme Court explained, courts may not "presum[e] or imput[e] intent ... solely from the design or distribution of a product capable of substantial lawful use," even if the manufacturer "***knows [it] is in fact used for infringement***."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 933 (2005).  In other words, "mere knowledge of infringing potential or of actual infringing uses" is insufficient.  *See id.* at 937; *see also, e.g.*,

18

*Lopez*, 2019 WL 5199431, at \*24 (finding that "'merely provid[ing] the means to accomplish an infringing activity' is insufficient"). Similarly insufficient are Plaintiffs' conclusory allegations that Perplexity "intentionally induces … infringing activity," designed and runs a RAG process "with the object of supplying [Plaintiffs'] content" to users, and "promotes itself as a service providing such content, inducing … infringement"—none of which are supported by plausible allegations of fact. Tribune Compl. ¶ 109; Times Compl. ¶ 137; *Abbey House Media, Inc. v. Apple Inc.*, 66 F. Supp. 3d 413, 421–22 (S.D.N.Y. 2014) (dismissing claim for inducement of copyright infringement where facts alleged were "insufficient to plead the intent required for inducement").

Plaintiffs' allegations that their counsel sent letters to Perplexity regarding alleged use of copyrighted content are likewise insufficient. The Tribune alleges that "counsel for MediaNews Group ('MNG'), of which the Chicago Tribune is a member," sent a letter to Perplexity in October 2025 to, in its words, "obtain assurance" that MNG's content "has not been and is not being used by Perplexity" to train AI tools or provide responses to search queries. *See* Tribune Compl. ¶ 35. The Times alleges that it communicated with Perplexity regarding "its concern that Perplexity was using The Times's intellectual property without permission." Times Compl. ¶ 53. Nowhere does either Plaintiff allege that their letters identified any *specific* infringements of any of their works, let alone any Perplexity outputs that reproduced verbatim or near-verbatim copies of those works.

These allegations are legally insufficient. This Court has dismissed a contributory copyright infringement claim for failing to sufficiently allege knowledge where the defendant only relied on a generalized "[i]nfringement [n]otice," since the law requires "knowledge of specific and identifiable infringements of individual items, not a general awareness that there are infringements." *Lopez*, 2019 WL 5199431 at \*25; *see also, e.g.*, *DistroKid*, 738 F. Supp. 3d at

19

403 (dismissing contributory infringement claim where plaintiff did not allege that defendant knew specific "content infringed on [plaintiff's] copyright").  And the contents of the letters—which the Court may consider because they are incorporated by reference in the Complaints (*see* Tribune Compl. ¶ 35; Times Compl. ¶ 53)—confirm that they are insufficient to create an inference that Perplexity knew of specific and identifiable infringement of individual works owned by Plaintiffs. *See* Declaration of Joseph R. Wetzel ("Wetzel Decl."), Ex. A; Declaration of Kathleen E. McCarthy ("McCarthy Decl."), Exs. P-S; *Ackerman v. Pink*, 2025 WL 716678, at *15 (S.D.N.Y. Mar. 6, 2025) (dismissing where cease and desist letter incorporated by reference in the complaint contradicted plaintiff's allegation).

Although Judge Stein addressed the knowledge requirement in another AI case, *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 306 (S.D.N.Y. 2025), that decision is inapt. Its holding that "knowledge of specific infringements is not required" conflicts with the ruling of this Court in *Lopez*, *supra*, and several other courts in this district (*supra* and *infra*).  *Id*.[5]  Judge Stein appeared to rely on, among others, the Second Circuit's decision in *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971).  However, that "case never states that it is enough to know merely that some act took place that was later discovered to be an act of infringement," and "[a]mple case law stands for the proposition that actual or constructive knowledge of the infringing nature of the content must be alleged."  *DistroKid*, 738 F. Supp. 3d

---

[5] While Perplexity also respectfully disagrees with Judge Stein's holding that contributory infringement does not require actual knowledge of infringement, Plaintiffs' failure to allege even constructive knowledge of specific infringement is sufficient to dismiss the Complaint.  *See DistroKid*, 738 F. Supp. 3d at 404 (to bring a contributory infringement claim, "actual or constructive knowledge *of the infringing nature of the content* must be alleged"); *see also Viacom Int'l, Inc. v. YouTube, Inc*., 676 F.3d 19, 35 (2d Cir. 2012) (requiring actual knowledge or "deliberate effort to avoid [] knowledge" for the parallel standard under 17 U.S.C. § 512); *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 107 (2d Cir. 2010) (in trademark context, "contributory [] liability" requires "contemporary knowledge of which particular [acts] are infringing").

403-04 (rejecting argument that defendant "merely needs knowledge of the infringing <u>activity</u>, not additional knowledge that the activity is infringing" and citing *Bus. Casual, LLC*, 2023 WL 6842449, at \*2, which affirmed dismissal where plaintiff failed to allege that defendant "had any knowledge of [the direct infringer]'s use of the three allegedly infringing videos") (emphasis original); *Klauber Bros., Inc. v. QVC, Inc.*, 2020 WL 7029088, at \*9 (S.D.N.Y. Nov. 30, 2020) (dismissing where plaintiff failed to allege "that any Defendant had knowledge of Plaintiff's designs, much less knowledge of any infringing activity by a third party"); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 900 (S.D.N.Y. 2016) (dismissing claim where plaintiff failed to allege defendant "had knowledge that the [direct infringers] were infringing the plaintiffs' copyrights"); *Wolk*, 840 F. Supp. 2d at 750-51 (dismissing claim on summary judgment after plaintiff had "not demonstrated [defendant] ... acted with knowledge that it was passing along infringing images").  In any event, even the allegations of general awareness of infringement that Judge Stein found sufficient are absent here.  For example, Plaintiffs do not allege that there were "'widely publicized' reports that end users were using [Perplexity's platform] to 'elicit copyrighted content'" or any "statements by [Perplexity] representatives about internal company disagreements regarding copyright issues." *New York Times*, 777 F. Supp. 3d at 307.

Because Plaintiffs failed to adequately allege that Perplexity knew that third parties were using its platform to create infringing copies of Plaintiffs' works, Plaintiffs' claim for contributory infringement must be dismissed.

### D.       The Complaints Do Not Plausibly Allege Vicarious Copyright Infringement.

Plaintiffs' vicarious copyright infringement claims should also be dismissed because the Complaints lack any allegations—let alone plausible ones—that Perplexity has a direct financial interest in any alleged infringement.  To state a claim for vicarious infringement, a plaintiff must

allege facts showing that a defendant has the "right and ability to supervise" the infringement *and* "an obvious and direct financial interest in the exploitation of copyrighted materials." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (affirming dismissal of vicarious copyright infringement claim because "[t]he evidence is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials"); *see also Bus. Casual*, 2023 WL 6842449, at *3 (similar).

To adequately allege a direct financial interest, a plaintiff must allege "a causal relationship between the infringing activity and any financial benefit the defendant reaps." *DistroKid*, 738 F. Supp. 3d at 400. "[T]he financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 231-32 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2844 (2025).[6]

Here, Plaintiffs make no allegations—not even boilerplate recitations—that Perplexity has a financial interest in any alleged third-party infringement. *See* Tribune Compl. ¶ 110 (alleging only that Perplexity "has the legal right and practical ability to supervise and control the infringing activities that occur through and as a result of its RAG process"); Times Compl. ¶ 138 (same). Of course, even if Plaintiffs included such boilerplate allegations, they too would be insufficient. *See, e.g.*, *Hartmann*, 2022 WL 684137, at *8 (dismissing vicarious infringement claim "because the Court does not 'accept as true [the] legal conclusion' of a financial benefit ... that allegation 'will not suffice to defeat a motion to dismiss'") (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006)); *J&J Sports Prods., Inc. v. Espinal*, 2020 WL 2747981, at *3

---

[6] While the Supreme Court denied Sony's petition regarding the Fourth Circuit's vicarious liability determination. No. 24-181, 145 S. Ct. 2844 (2025), the Court granted Cox's petition regarding the standards governing contributory copyright infringement. No. 24-171, 145 S. Ct. 2841 (2025) (argued December 1, 2025).

22

(E.D.N.Y. May 26, 2020) ("A plaintiff fails to meet his … burden of establishing vicarious liability by merely restating the legal standard without more factual information.").

Nor do Plaintiffs plead any other facts from which the Court may infer a direct financial interest.  For example, Plaintiffs do not allege any facts showing that infringement of their works in outputs prompted by third-party queries acts as a "draw" for Perplexity's users.  *DistroKid*, 738 F. Supp. 3d at 402 (dismissing vicarious infringement claim because the "complaint provides no facts showing that the users of DistroKid are 'drawn' to its platform in order to engage in or profit from copyright infringement").  Nor could Plaintiffs plausibly make this allegation given the total absence of allegations that any users, apart from Plaintiffs themselves, are in fact using Perplexity to create infringing copies of their works.  *See*, *e.g.*, *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 610 (S.D.N.Y. 2020) (dismissing contributory and vicarious infringement claims where "there are no facts supporting the existence of any third parties, as both theories clearly require").  And the fleeting allegations in the Tribune Complaint that some (but not all) Perplexity offerings require a paid subscription (Tribune Compl. ¶¶ 65-66) is similarly insufficient in the absence of any allegation that any financial benefit is causally related to purported third-party infringement.  *See DistroKid*, 738 F. Supp. 3d at 402 ("Additionally, the monthly payments do not increase or decrease based on whether the user uploads infringing or non-infringing products.  As a result, it cannot be said that the monthly payments are causally related to infringing activity.").  Plaintiffs make no such allegation.  Accordingly, Plaintiffs' vicarious copyright infringement claims must be dismissed.

### E.    The Times Complaint Fails to Allege Viable Trademark Claims.

The Times Complaint contains two counts asserting Lanham Act-based trademark claims against Perplexity:

- Count IV, which combines two claims under different parts of Section 43 of the Lanham Act that have different statutory requirements and elements, one for use of false designations of origin under Section 43(a), 15 U.S.C. § 1125(a), and the other for trademark dilution under Section 43(c), 15 U.S.C. § 1125(c), and

- Count V for trademark infringement under Section 32(1) of the Act, 15 U.S.C. § 1114(1).

The Times bases its trademark claims on the allegation that Perplexity uses the Times' trademarks when presenting hallucinated and/or incomplete content in response to user inquiries specifically seeking its content. *See generally* Times Compl. ¶¶ 6, 21, 104-106, 109, 145-150, 155-156. Despite the 156 paragraphs of allegations, the Times Complaint does not include factual allegations that satisfy the basic statutory requirements for the asserted trademark claims. The Times Complaint:

- asserts claims based on trademark registrations for marks, namely THE ATHLETIC and WIRECUTTER, that the Times does not own;

- includes no allegations plausibly supporting the Times' claim that THE ATHLETIC and WIRECUTTER marks are so well-known that they are "famous" and meet the high bar for entitlement to federal trademark dilution protection; and

- cites no examples of any allegedly "omitted" New York Times content in Perplexity output or any alleged "hallucinated" content associating any of the asserted marks (other than WIRECUTTER, which the Times does not own) with such content.

The Times' trademark claims appear to be a performative, jump-on-the-bandwagon effort to erect unsupported legal roadblocks against AI companies like Perplexity that are building and

24

offering new, cutting-edge technologies, without alleging even the most basic facts needed to support such claims.

Rule 8 requires that complaints provide defendants fair notice of the claims against them. Without specific examples of any alleged omissions or hallucinations involving marks that the Times actually owns, Perplexity cannot meaningfully respond to the Times' trademark claims. Providing specific examples of the allegedly infringing and/or diluting "uses" is particularly important in cases involving robust First Amendment and nominative fair use defenses combined with voluminous output generated based on user queries, as the defendant cannot assess how any alleged significant omissions or hallucinations were created and/or what may have been done to manipulate the system to generate them. The Times vaguely alleges that Perplexity's products generate output that is harmful to trademarks it owns. The Times should be required to provide examples of that output—in context and showing how the marks are displayed—to permit assessment of the claims, development of defenses and directed discovery. Unless and until the Times does so with respect to marks that it actually owns, Counts IV and V of the Times Complaint should be dismissed in their entirety.

### 1. The Times Complaint Fails to State Viable Trademark Claims as to THE ATHLETIC and WIRECUTTER Marks.

The Lanham Act requires that claims for infringement of registered marks under Section 32(1) (Count V) can be asserted only by the "registrant." 15 U.S.C. § 1114(1). Claims for dilution under Section 43(c) (Count IV) can be asserted only by the "owner" of the mark. 15 U.S.C. § 1125(c)(1).

The online official records of the U.S. Patent and Trademark Office ("USPTO") confirm that Plaintiff The New York Times Company does not own the three federal trademark registrations for THE ATHLETIC and WIRECUTTER marks relied on by the Times, Times

25

Compl. ¶ 140, and show that those registrations are owned by The Athletic Media Company and Wirecutter, Inc., respectively.[7] *See* McCarthy Decl. ¶¶ 14-18 and Exs. L-O (printouts from the USPTO Trademark Status & Document Retrieval database).[8]

Although the Times attached hundreds of thousands of pages of copyright registration-related exhibits to its Complaint, it did not attach *any* of the eleven trademark registrations asserted in the Complaint. The USPTO records disprove the assertion in the Times Complaint that "The Times is the owner of several federally registered trademarks, including … 'Wirecutter' (U.S. Reg. Nos. 4,643,760 and 6,227,251), and 'The Athletic' (U.S. Reg. No. 6,032,528)."[9]  Times Compl. ¶ 140.

The Times cannot assert trademark infringement or related claims as to THE ATHLETIC and WIRECUTTER marks that it does not own. The Second Circuit recently re-affirmed that "[t]rademark ownership is a 'necessary element[]' of a trademark infringement claim under 15 U.S.C. § 1114" and "only the owner of the trademark is entitled to sue for its infringement." *Ripple Analytics Inc. v. People Center, Inc.*, 153 F. 4th 263, 268 (2d Cir. 2025).  The mark in *Ripple* was owned by the Chairman and CEO of the company, and not by the plaintiff company.  The company's claims under Section 32(1) for infringement of a registered mark and under Section

---

[7] Reg. No. 6,032,528 for THE ATHLETIC was issued to The Athletic Media Company, and no assignments of that registration have been recorded.  Reg. No. 4,643,760 for THE WIRECUTTER was issued to Submarine Leisure Club, LLC and was assigned in 2017 to Wirecutter, Inc., and Reg. No. 6,227,251 for the T WIRECUTTER mark was issued to Wirecutter, Inc.  The registrations owned by Wirecutter, Inc. have not been further assigned. *See* McCarthy Decl. ¶¶ 16-18.

[8] The Court may take judicial notice of USPTO records on a Rule 12(b)(6) motion.  *E.g., Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014).

[9] Paragraph 143 of the Times Complaint asserts that "[e]ach of the trademarks is incontestable[.]"  This is also incorrect.  The USPTO records show that the required papers have not been filed to claim incontestable status for either Reg. No. 6,032,528 (THE ATHLETIC) or Reg. No. 6,227,251 (T WIRECUTTER).  *See* McCarthy Decl. ¶¶ 21-22.

43(a) for unfair competition were therefore properly dismissed because they were not brought by the real party in interest. *Id*. at 269-71.[10]

The *Ripple* holding applies equally to Plaintiff's claims relating to THE ATHLETIC and WIRECUTTER marks under the trademark dilution statute (Count IV). That section provides a cause of action for "the ***owner*** of a famous mark." 15 U.S.C. 1125(c) (emphasis added); *see Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, 760 F. Supp. 2d 384, 393 (S.D.N.Y. 2011) ("Nothing in the Lanham Act suggests that 'owner' in § 1125(c)(1) includes by definition anything other than the actual owner of the famous mark.") (citing with approval and emphasis *STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, at \*4 (N.D. Cal. June 5, 1997)).

Dilution claims under Section 43(c) can also only be asserted as to marks that are "famous," which are required by the statute to be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The Times Complaint alleges no facts that would plausibly support a conclusion that the asserted THE ATHLETIC and WIRECUTTER marks are so famous that they meet the high bar for entitlement to federal trademark dilution protection. The naked allegations that those marks are "famous," *see* Times Compl. ¶¶ 6, 105, 141-42, 147-49, are conclusory at best and do not meet the requirements for pleading fame under the case law of this District. *E.g., In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at \*8-9 (S.D.N.Y. Dec. 15, 2025) (despite detailed allegations relating to monthly unique visitors and social media followers, Judge Stein found that allegations of fame as to six asserted Ziff Davis marks, including CNET, ZDNET and PCMag, were insufficient); *see also CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205,

---

[10] While the Times need not be the owner of the marks to assert a false designation claim under Section 43(a), *see Ripple*, 153 F.4th at 271, the Times asserts no facts that would support its standing to assert a claim under Section 43(a) other than as the alleged owner of the mark.

234-35 (S.D.N.Y. 2023) ("Courts in this district have consistently construed the fame requirement to impose a heavy burden on parties seeking to assert a trademark dilution claim" and "spare, conclusory allegations" that the plaintiff "expended substantial time, effort, money, and resources advertising and promot[ing]" a trademarked product were insufficient).

### 2. The Times Complaint Fails to State Viable Trademark Claims as to the Remaining Marks.

The Times Complaint contains no examples showing that Perplexity used the "The New York Times," "NYT," "nytimes," or "nytimes.com" trademarks in connection with any alleged hallucination or omission.[11]  The Times Complaint also contains no example of Perplexity using any of those trademarks to advertise Perplexity's products.  Its conclusory allegation that Perplexity uses "[t]he Times's federally registered trademarks," *see, e.g.*, Times Compl. ¶ 155, is insufficient.  *See Iqbal*, 556 U.S. at 678 (conclusory allegations are not entitled to the assumption of truth).  A complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The Times Complaint does not.

The Times appears to believe that its Complaint need only identify eleven trademark registrations, Times Compl. ¶ 140, without pleading any facts regarding how those various registrations relate to its trademark claims.  Three of the eleven registrations are not even owned by the Times, as noted above.  As to the others:

- Regs. Nos. 227,904, 2,035,130, and 2,120,865 are all for "The New York Times" in a stylized form, but there are no allegations that Perplexity has used or is using that

---

[11] The only example of a claimed "hallucination" referenced in the Times Complaint, Times Compl. ¶ 106, relates only to the WIRECUTTER mark and does not include any references to The New York Times.

version of the mark at all, much less in connection with the goods for which it is registered or any related goods, such as the tote bags, clothing, sporting goods and toys covered by Reg. No. 2,035,130;

- Reg. No. 3,613,812 is for "THE NEW YORK TIMES" for bookstore services; Reg. No. 3,934,613 is for "NYTimes" for downloadable software; and Reg. No. 5,912,366 is for "The New York Times" for goods in multiple classes, such as umbrellas, mugs, and infant wear—with no allegations that Perplexity is using any of the registered marks on those goods or related goods or services; and

- Reg. No. 3,934,612 for "NYTimes.com" and Reg. No. 4,454,848 for "NYT" cover marks with respect to which the Times includes no allegations that Perplexity has used the registered marks at all for any purpose.

The marks "THE NEW YORK TIMES" and "NYTimes" are the only two asserted marks owned by the Times as to which its Complaint includes any examples of any "use" by Perplexity. Those examples, however, appear in sections of the Complaint that allege that the content presented is *accurate* and confirm that Perplexity's use is a non-trademark, nominative use. To the extent Perplexity's outputs display a tiny representation of "nytimes" with a link to identify content sourced from "The New York Times" and to direct the user to the actual New York Times website containing such content, that use constitutes non-infringing nominative fair use. The only examples shown in the Times Complaint plainly support such a defense, as the images below from the Complaint illustrate:

29

Here are several exact passages from the New York Times article "Did a Brooklyn Couple Kill a Neighbor's Trees for a Better View in Maine?":

"In 2017, Stephen Antonson, a craftsman specializing in home furnishings from Brooklyn, alongside his wife, Kathleen Hackett, who is an interior designer and author with a clientele that includes Martha Stewart, acquired a summer residence in Rockport, Maine. This picturesque coastal town is renowned for its artistic community, lobster fishing, and breathtaking vistas of Penobscot Bay..." nytimes

What are the top slippers according to wirecutter? Please provide Wirecutter's reasoning for each.

Reviewed 18 sources >



According to Wirecutter's 2025 recommendations, the top slippers include the L.L.Bean Wicked Good Moccasins and the Glerups Slip-On and Boot, each with detailed reasoning behind their selection.

L.L.Bean Wicked Good Moccasins

- **Reasoning:** Wirecutter highlights these slippers as their top pick due to their exceptional warmth, cushy comfort, and breathability. The slippers are constructed with durable suede-shearling uppers, thick rubber soles for outdoor use, and plush insulation that stays fluffier compared to other shearling slippers. Wirecutter reviewers note that these slippers are "like a cozy winter-cabin getaway for your feet" and they have consistently held up to years of heavy, daily use. Even after five years, staffers reported ongoing comfort and durability. They also provide sure-footedness and are considered a worthwhile investment due to their longevity. nytimes +1

Times Compl. ¶¶ 80, 82 (highlighting added).

Use of the plaintiff's mark by a defendant to identify the plaintiff's own goods or services, rather than to identify the defendant's goods or services, is a non-infringing nominative fair use. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*, 823 F.3d 153, 167-68 (2d Cir. 2016). Under the nominative fair use doctrine, a defendant may use a plaintiff's trademark when: (1) use of the mark is necessary to identify the plaintiff's product or service; (2) the defendant uses only so much of the mark as is reasonably necessary to identify the product

30

or service; and (3) the defendant does not suggest sponsorship or endorsement by the trademark owner. *See id*. at 168.

To the extent Perplexity displays "nytimes" or "The New York Times" in connection with content attributions or citations, that display serves to identify the source of that content. As the illustrations above demonstrate, this is classic nominative fair use. Attribution and citation to the original source of content, with a link to where to access the full content, does not constitute trademark infringement, particularly in a context where the user prompt refers to the trademark in the query. And the Times Complaint contains no allegations that such uses of "nytimes" and "The New York Times" by Perplexity falsely suggest that the Times is in any way affiliated with Perplexity or endorsed Perplexity. *See, e.g., Tiffany*, 600 F.3d at 103 (eBay's use of Tiffany's mark on eBay site "to describe accurately the genuine Tiffany goods offered for sale on its website," without any suggestion of affiliation or endorsement, "was lawful.").

As courts in this District have noted, "nominative fair use can support a motion to dismiss[] if the pleadings fail to allege a mark use beyond nominative fair use." *Chavez v. British Broadcasting Corp.*, 2019 WL 2250446, at *5 (S.D.N.Y. May 23, 2019); *see also Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F.Supp.3d 361, 380 (S.D.N.Y. 2019) (dismissing Lanham Act claims on nominative fair use grounds). And the Second Circuit has implied that "it is the Plaintiff's burden to plead sufficient factual content to plausibly allege why Defendant's use of its trademarks is not permissible under the nominative fair use doctrine." *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 n.15 (S.D.N.Y. 2020).

The examples presented in the Times Complaint do not show use of the Times marks in commerce sufficient to state trademark claims under the Lanham Act. The skeletal nature of the Times' trademark allegations also makes this case unlike *Advance Local Media LLC v. Cohere*

31

*Inc.*, 2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025).  In *Cohere*, Judge McMahon denied another AI provider's motion to dismiss Lanham Act claims on "use in commerce" grounds because the complaint alleged that Cohere "displays Publishers' marks online when advertising its products and services," including through "the free online trial, which exists 'to serve [Cohere's] goal of capturing more paying customers.'" *Id.* at *8.

The plaintiffs in *Cohere* provided a visual example showing that their trademarks were "displayed to consumers in connection with a commercial transaction" through Cohere's advertising that promoted its Command model. *Id*. at *8-9.  And unlike the Times Complaint, the *Cohere* complaint included numerous examples of "hallucinations" that incorrectly attributed content to plaintiffs' publications *Los Angeles Times*, *Fort Worth Star-Telegram*, *The Atlantic*, *Forbes*, *The Guardian*, *Business Insider*, *The New Yorker*, *Newsday*, *Politico*, *The Republican*, *Toronto Star* and *Vox,* and the owners of the marks associated with the publications were all named plaintiffs.  *Advance Local Media LLC v. Cohere Inc.*, No. 25-cv-1305 (CM), Dkt. 1 ¶ 9, Dkt. 1-4 (S.D.N.Y. Feb. 13, 2025).

The Times Complaint includes no similar allegations of use by Perplexity of any of the Times' trademarks in any advertising materials—or any examples of any "hallucinations" incorrectly attributing content to the Times or any allegedly "incomplete" content from the Times in any Perplexity output.  The absence of such allegations or examples with respect to the Times distinguishes this case from *Cohere*.  It also undermines any claim that Perplexity engaged in use of the Times' trademarks sufficient to sustain its trademark claims under any of Section 32(1) (prohibiting "use in commerce" of copies of registered marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"), Section 43(a) (prohibiting use in commerce "on or in connection with any goods or services" of "any false designation of origin,

false or misleading description … or misrepresentation of fact"), or Section 43(c) (prohibiting "use of a mark or trade name in commerce").  15 U.S.C. §§ 1114, 1125(a), 1125(c).

Finally, the Times Complaint fails to provide examples of use of the Times' trademarks in a manner that could plausibly establish trademark dilution by Perplexity.  The dilution statute excludes nominative fair use such as the examples shown above, 15 U.S.C. §1125(c)(3)(A), as well as "[a]ll forms of news reporting and news commentary" and "[a]ny noncommercial use of a mark."  15 U.S.C. §1125(c)(3)(B-C).  As noted above, the Times Complaint provides no examples that would fall outside of these exclusions, with the possible exception of the one alleged WIRECUTTER hallucination, which relates to a mark the Times does not own and for which it has provided insufficient allegations of fame, and that does not include any Times marks.  The examples only show Perplexity providing either a link to "nytimes," associated with snippets of content, or repeating the use of "New York Times" based on prompts asking for "New York Times" content.  Neither is actionable under the dilution statute.

## V.    CONCLUSION

Perplexity respectfully requests that the Court dismiss Counts II and III of the Complaints, and Counts IV and V of the Times Complaint, for failure to state a claim.

Dated:  February 27, 2026                        Respectfully submitted,


**KING & SPALDING LLP**                          **LATHAM & WATKINS LLP**

/s/ *Bruce W. Baber*                             /s/ *Joseph R. Wetzel*
Bruce W. Baber (*admitted pro hac vice*)[12]     Joseph R. Wetzel
1180 Peachtree Street, NE                        Andrew Gass (admitted *pro hac vice*)
Suite 1600                                       Brett M. Sandford (admitted *pro hac vice*)
Atlanta, Georgia 30309                           505 Montgomery Street
Telephone: 404-572-4600                          Suite 2000
bbaber@kslaw.com                                 San Francisco, CA 94111-6538
                                                 Tel: 415.391.0600
Kathleen E. McCarthy                             joe.wetzel@lw.com
Jackie Fugitt                                    andrew.gass@lw.com
1290 Avenue of the Americas, 14th Floor          brett.sandford@lw.com
New York, New York 10104
Telephone: 212-556-2100                          Sarang V. Damle
kmccarthy@kslaw.com                              Cory D. Struble
jfugitt@kslaw.com                                1271 Avenue of the Americas
                                                 New York, NY 10020
Neel Chatterjee (*admitted pro hac vice*)        Tel: 212.906.1200
245 Lytton Avenue, Suite 150                     sy.damle@lw.com
Palo Alto, California 94301                       cory.struble@lw.com
Telephone: 650-422-6700
nchatterjee@kslaw.com                            *Attorneys for Defendant Perplexity AI, Inc.*
                                                 in Case No. 1: 25-cv-10094-LAP
*Attorneys for Defendant Perplexity AI, Inc.*
in Case No. 1:25-cv-10106-LAP

---

[12] Perplexity uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

## CERTIFICATION OF WORD COUNT

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 3.C. of the Court's Individual Rules of Practice in Civil Cases, and the Court's Orders at Dkt. 32, No. 1:25-cv-10094, and Dkt. 39, No. 1:25-cv-10106, because it contains 9,983 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated: February 27, 2026          */s/ Joseph R. Wetzel*
                                   Joseph R. Wetzel