**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHICAGO TRIBUNE COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-10094-LAP |
| THE NEW YORK TIMES COMPANY,<br>WIRECUTTER, INC., and THE ATHLETIC<br>MEDIA COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-10106-LAP |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 3

III.  LEGAL STANDARDS .................................................................................. 5

IV.   ARGUMENT ................................................................................................ 6

    A.    Plaintiffs Sufficiently Allege Perplexity's Direct Infringement in Generating Infringing Outputs (Count II). ........................................... 6

    B.    Plaintiffs Are Not Required to Plead All Possible Examples of Perplexity's Infringing Outputs (Count II). ........................................... 12

    C.    Plaintiffs Alleged Sufficient Facts to Establish Contributory and Vicarious Copyright Infringement Liability (Count III). ...................... 15

        1.    Plaintiffs Properly Allege That Perplexity Induced Infringement. ................................................................................ 16

        2.    Plaintiffs Sufficiently Allege Perplexity's Direct Financial Interest in its Infringing Conduct to Support the Vicarious Copyright Infringement Claims. .............................................. 20

    D.    The Times's FAC Properly Pleads the Trademark Claims (Counts IV and V). ................................................................................................. 22

        1.    The FAC properly pleads the trademark claims for The Times ............... 22

            (a)    The FAC alleges that Perplexity improperly uses The Times's trademarks in hallucinated outputs .............. 22

            (b)    The FAC alleges that Perplexity uses The Times Plaintiffs' Trademarks in commerce ............................... 23

            (c)    Perplexity's hallucinations are not Nominative Fair Use ........................................................................... 24

            (d)    The FAC alleges that Perplexity engaged in unfair competition, dilution and infringement of all pleaded registrations ................................................. 25

        2.    The FAC properly pleads that the trademarks WIRECUTTER and THE ATHLETIC are famous for Dilution in Count IV .................... 26

            (a)    WIRECUTTER and THE ATHLETIC are famous under 1125(c) ...................................................... 26

(b)    WIRECUTTER and THE ATHLETIC are widely recognized by the general consuming public..................................................................................... 29

V.    CONCLUSION................................................................................................. 31

CERTIFICATE OF COMPLIANCE .......................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
   131 F. Supp. 3d 196 (S.D.N.Y. 2015) ................................................................. 28

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020 ........................................................................... 7, 14

*ABKCO Music, Inc. v. Sagan*,
   50 F.4th 309 (2d Cir. 2022) ............................................................................. 7

*Advance Local Media LLC v. Cohere Inc.*,
   No. 25-CV-1305 (CM), 2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025) ........................ 17, 24, 25

*Arista Recs. LLC v. Lime Grp. LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011) ........................................................... 18, 19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) .................................................................................. 6

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08-CV-5718, 2009 WL 1675080 (S.D.N.Y. 2009) .......................................... 30

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
   No. 21-CV-3610 (JGK), 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ...................... 9

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013),
   *aff'd*, 910 F.3d 649 (2d Cir. 2018) ............................................................ 2, 8, 9, 12

*Capitol Recs., Inc. v. MP3tunes, LLC*,
   48 F. Supp. 3d 703 (S.D.N.Y. 2014) .................................................................. 7

*Car-Freshner Corp. v. Meta Platforms, Inc.*,
   No. 22-CV-1305, 2023 WL 7325109 (N.D.N.Y. 2023) .......................................... 28

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ............................................................................. 10

*CDC Newburgh Inc. v. STM Bags, LLC*,
   692 F.Supp.3d 205 (S.D.N.Y. 2023) .................................................................. 29

*CoStar Grp., Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ............................................................................. 9

*Cox Communications, Inc. v. Sony Music Entertainment*,
   146 S. Ct. 959 (2026) .................................................................................. 3, 16

*Diesel S.p.A. v. Diesel Power Gear, LLC,*
　No. 19-CV-9308, 2022 WL 956223 (S.D.N.Y. 2022)................................................. 29

*DigitAlb, Sh.a v. Setplex, LLC,*
　284 F.Supp.3d 547 (S.D.N.Y. 2018) ........................................................................ 30

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC,*
　844 F.3d 79 (2d Cir. 2016) ................................................................................. passim

*Energy Intelligence Grp., Inc. v. Jefferies, LLC,*
　101 F. Supp. 3d 332 (S.D.N.Y. 2015) ..................................................... 6, 13, 14, 15

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.,*
　No. 12-CV-5105, 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014)............................... 26

*Faber v. Metro. Life Ins. Co.,*
　648 F.3d 98, 104 (2d Cir. 2011) ............................................................................... 6

*Fox News Network, LLC v. TVeyes, Inc.,*
　883 F.3d 169 (2d Cir. 2018) ...................................................................................... 8

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,*
　443 F.2d 1159 (2d Cir. 1971) ................................................................................... 20

*GMA Accessories, Inc. v. Idea Nuova, Inc.,*
　157 F. Supp. 2d 234 (S.D.N.Y. 2000) ...................................................................... 28

*Grand v. Schwarz,*
　No. 15-CV-8779, 2016 WL 2733133 (S.D.N.Y. 2016)............................................. 28

*Hines v. Roc-A-Fella Records, LLC,*
　No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) .............................. 14

*Hudson Furniture, Inc. v. Mizrahi,*
　No. 20-CV-4891, 2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023) ............................. 25

*In re Frontier Commc'ns Corp.,*
　658 B.R. 277 (Bankr. S.D.N.Y. 2024)...................................................................... 21

*In re OpenAI, Inc. Copyright Infringement Litig.,*
　No. 25-CV-4315, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) .............................. 29

*In re Thelen LLP,*
　736 F.3d 213 (2d Cir. 2013) ...................................................................................... 6

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC,*
　823 F.3d 153 (2d Cir. 2016) ..................................................................................... 24

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013) ................................................................ 23

*Larball Publ'g Co., Inc. v. Lipa*,
   No. 22-CV-1872, 2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023)................................. 14

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) ......................................................... 15

*Lewittes v. Cohen*,
   No. 03-CV-189, 2004 WL 1171261 (S.D.N.Y. 2004)............................................. 28

*Lopez v. Bonanza.com, Inc.,*
   No. 17-CV-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ............................... 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015). ................................................................ 31

*Luv N'Care Ltd. v. Regent Baby Products Corp.*,
   841 F.Supp.2d 753 (S.D.N.Y. 2012) .......................................................... 31

*Malletier v. Dooney & Bourke, Inc.*,
   561 F. Supp. 2d 368 (S.D.N.Y. 2008) ........................................................ 30

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)..................................................................... passim

*Nazemian et al. v. Nvidia Corp.*,
   No. 24-cv-01454-JST (N.D. Cal.)............................................................. 18

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) ........................................................ 29

*New York Times Co. v. Microsoft Corp. et al.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025) ................................................. 7, 11, 12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
   602 F.3d 57 (2d Cir. 2010) .................................................................. 13

*Piuggi v. Good for You Prods. LLC*,
   739 F. Supp. 3d 143 (S.D.N.Y. 2024) ........................................................ 14

*Rams v. Def Jam Recordings, Inc.*,
   202 F. Supp. 3d 376 (S.D.N.Y. 2016) .................................................... 20, 21

*Schneider v. Pearson Educ., Inc.*,
   No. 12-CV-6392, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) ................................... 15

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
  193 F. Supp. 3d 245 (S.D.N.Y. 2016) aff'd,
  699 F. App'x 93 (2d Cir. 2017)................................................................................ 30

*Shull v. TBTF Prods. Inc.*,
  No. 18-CV-12400, 2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019)............................................. 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)............................................................................................ 12

*Subversive Tools, Inc. v. Bootstrap Farmer, LLC*,
  No. 23-CV-6946, 2025 WL 3229122 (S.D.N.Y. 2025)......................................................... 30

*TCPIP Holding Co., v. Haar Commc'ns., Inc.*,
  244 F.3d 88 (2d Cir.2001) .................................................................................... 30

*The Sports Auth., Inc. v. Prime Hosp. Corp.*,
  89 F.3d 955 (2d. Cir. 1996) .................................................................................. 25

*Van Praagh v. Gratton*,
  993 F. Supp. 2d 293 (E.D.N.Y. 2014) .......................................................................... 28

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ................................................................................. 9

*Walker Wear LLC v. Off-White LLC*,
  624 F.Supp.3d 424 (S.D.N.Y. 2022) ........................................................................... 30

*Warren v. John Wiley & Sons, Inc.*,
  952 F. Supp. 2d 610 (S.D.N.Y. 2013) ...................................................................... 6, 13

*White v. DistroKid, LLC*,
  766 F. Supp. 3d 451 (S.D.N.Y. 2025) ......................................................................... 9

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2012) ......................................................................... 9

*Ziff Davis et al. v. OpenAI et al.*,
  25-cv-4315 (S.D.N.Y) .................................................................................... 26, 28

**Statutes**

15 U.S.C. § 1114(1) ...................................................................................... 3, 22, 26

15 U.S.C. § 1125 (c) ................................................................................... 3, 22, 26, 30

15 U.S.C. § 1125(a) ...................................................................................... 3, 22, 26

**Other Authorities**

McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Fifth Edition..... 25, 29

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 5

## I.    INTRODUCTION

Plaintiffs in this case, The New York Times Company ("The Times") and the Chicago Tribune Company, LLC ("Chicago Tribune" or "Tribune"), have built their reputations for excellence[1] by producing, at tremendous expense, accurate, well-written, carefully edited, and distinctive journalism since they were founded over 170 years ago. Through its actions, Perplexity AI, Inc. ("Perplexity") has copied millions of their copyrighted articles without permission or compensation to operate substitutive products that divert traffic, subscriptions, and other revenue that should rightfully be Plaintiffs' into Perplexity's coffers.

In its Motion to Dismiss Plaintiffs' First Amended Complaints ("FACs"), Dkt. 58 ("Mot.") at 1, Perplexity attempts to excuse its theft by arguing that its generative artificial intelligence ("GenAI") products simply utilize unprotected facts reported by The Times and the Tribune. Not so. As alleged in detail in their FACs, Perplexity has copied millions of articles belonging to The Times and the Tribune and built its GenAI products with that content, and content stolen from many others, such that its products will produce substitutive, often verbatim, responses to user queries that go well beyond a limited recitation of facts. Perplexity's assertion that Plaintiffs' content is but a small part of its overwhelming theft is no defense. Mot. at 1.

Perplexity's Motion to Dismiss does not challenge Count I of either The Times or Tribune FAC; that is, the claim that Perplexity's copying of Plaintiffs' copyrighted works to create the raw material for its GenAI products directly infringes Plaintiffs' copyrights.

---

[1] On May 4, 2026, The Times, The Athletic, and the Chicago Tribune won their most recent Pulitzer prizes: The Times for investigative reporting, news photography, and opinion writing; The Athletic for audio reporting; and the Chicago Tribune for local reporting. https://www.pulitzer.org/prize-winners-by-year/2026

With respect to Count II, Plaintiffs' claims regarding Perplexity's copying of Plaintiffs' copyrighted works to create outputs to user queries, Perplexity argues that the FACs do not state a cause of action because they do not allege that Perplexity has engaged in "volitional conduct." Essentially, Perplexity argues that the end user, not Perplexity, should be held responsible for any copying that results from a user query because the output is "automatic." That is, "the user made me do it." Unfortunately for Perplexity, its argument is belied by both the law—including Judge Stein's careful analysis of GenAI products issued in a case brought against OpenAI and Microsoft by, *inter alia*, The Times and The Tribune—and the facts as pleaded in the FACs. Perplexity itself scraped, crawled, copied, and curated Plaintiffs' content for use in generating outputs—conduct that satisfies the volitional-conduct standard applied by the Second Circuit and this Court. *See, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018). In short, Perplexity's products are not analogous to a DVR; they are instead like a juke box on which an owner pre-selected *unlicensed* copyrighted content and made it available to its customers. *See* Section II(A) below.

Perplexity also argues that Plaintiffs should be permitted to proceed on Count II only for the copyrighted articles for which Plaintiffs included an example of copied outputs in their FACs. Perplexity asks this Court to apply a pleading requirement no court has adopted: that a plaintiff must always include examples of infringement from every registered copyright identified in a complaint. Plaintiffs here have alleged that the numerous "examples of verbatim or otherwise substantially similar or substitutive outputs [identified in the FACs] create a reasonable inference that Perplexity is generating massive amounts of such outputs in response to users' prompts, from all or virtually all of [Plaintiffs'] valuable, copyrighted works." Times FAC ¶ 110; Tribune FAC

¶ 78. That is legally sufficient, particularly where, as here, the records of infringing outputs are exclusively in Perplexity's possession. *See* Section II(B) below.

Perplexity also seeks to dismiss Count III, alleging contributory and vicarious copyright infringement, on two different bases. Perplexity is incorrect as to each. *First*, under the Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), Plaintiffs have properly alleged induced infringement based on, *inter alia*, Perplexity's express encouragement that users "skip the links"—that is, obtain their news from Perplexity's generated outputs, which are based on copies of Plaintiffs' content. *See* Section II(C)(1). *Second*, Perplexity argues that Plaintiffs have not sufficiently alleged Perplexity's direct financial interest in its infringing conduct. As set forth in the FACs, Perplexity, including through statements by its C.E.O., has repeatedly promoted its products as a source of high-quality news, a marketing strategy designed to attract users and generate revenue. *See* Section II(C) below.

Finally, Perplexity's motion to dismiss Counts IV and V asserted by The Times, Wirecutter, Inc. ("Wirecutter"), and The Athletic Media Company ("The Athletic") (collectively, "Times Plaintiffs") should be denied. The Times Plaintiffs' FAC properly pleads the elements of the trademark claims asserted in Count IV (Perplexity's violation of 15 U.S.C. §§ 1125(a) and (c)) and Count V (Perplexity's violation of 15 U.S.C. § 1114(1)). *See* Section IV(D) below.

## II.    BACKGROUND

The Times publishes digital and print products, including its core news product, *The New York Times*, which are available through its mobile applications, on its website (nytimes.com), and as a printed newspaper. Times FAC ¶ 8. The Times's journalism may be presented through other formats as well, such as videos and podcasts. *Id*. The Times also publishes, among other interest-specific publications, Wirecutter, a renowned and wildly popular product review site which recommends the best products in dozens of categories. *Id*. ¶ 9. Similarly, The Athletic, a wholly

owned subsidiary of The Times, provides in-depth coverage of hundreds of professional and college teams across the major sports leagues globally. *Id.* ¶ 10. The Times owns over ten million registered copyrighted works for its print and digital content. *Id.*, Ex. A.

The Chicago Tribune publishes digital and print products, including its core news product, *Chicago Tribune*, which is available on its mobile application, on its website (www.chicagotribune.com), and as a printed newspaper. Tribune FAC ¶ 8. The Chicago Tribune owns registered copyrights for millions of its articles. *Id.*; Tribune FAC, Ex. A.

As alleged in The Times FAC, Perplexity is a GenAI company that describes its namesake chatbot as an "answer engine" that gathers information from authoritative sources. Times FAC ¶ 2; Tribune FAC ¶ 2. What Perplexity characterizes as "information gathering" involves copying publishers' content and combining it with a Large Language Model ("LLM") to produce lengthy and expressive output derived from copyrighted content that is owned by others. Times FAC ¶ 3; Tribune FAC ¶ 3.  Perplexity makes copies of that content to store in its "AI-First" search index and to feed to its suite of retrieval-augmented generation or "RAG" products. Times FAC ¶ 4; Tribune FAC ¶ 4. Perplexity then repackages the original content in written responses to users. Those responses, or outputs, often are verbatim or near-verbatim reproductions, summaries, or abridgements of the original content, including Plaintiffs' copyrighted works. *Id.*

 In describing "what sets Perplexity apart," Perplexity touts that while "[t]raditional search engines present you with lots of links to sift through[,] Perplexity functions as an intelligent research assistant, streamlining your information gathering by delivering the precise knowledge you need without the extra steps and clicks." *Id.* As recently as August 2024, Perplexity boasted that its chatbot allowed users to "Skip the links" by providing "a single, comprehensive answer that summarizes everything you need to know." *Id.*

Plaintiffs allege that Perplexity's conduct violates their exclusive rights under the Copyright Act at two principal stages: *First*, at the input stage (Count I), when Perplexity unlawfully crawls, scrapes, copies, and distributes Plaintiffs' content using software programs to build an AI-First search index and to provide Plaintiffs' content in real time as input to LLMs to formulate a response to users' prompts. Times FAC at ¶¶ 5, 74-81; Tribune FAC at ¶¶ 6, 52-58. *Second*, at the retrieval and output stage (Count II), when Perplexity's GenAI products, in response to user queries, copy additional content from Plaintiffs, or use Plaintiffs' copyrighted content that Perplexity has previously copied, to generate outputs that are identical or substantially similar to Plaintiffs' content. Times FAC ¶¶ 82-108; Tribune FAC ¶¶ 59-76. Plaintiffs also asserted claims for contributory and vicarious copyright infringement (Count III).

Plaintiffs further claim Perplexity violates Plaintiffs' trademarks under the Lanham Act by generating fabricated content or "hallucinations" and falsely attributing them to Plaintiffs by displaying them alongside Plaintiffs' famous, registered trademarks. Times FAC at ¶¶ 7, 114-18; Tribune FAC at ¶¶ 7, 79-83. Plaintiffs allege that Perplexity violates their trademarks under the Lanham Act when Perplexity omits portions of Plaintiffs' content without disclosing those omissions and displays the incomplete and inaccurate reproductions alongside Plaintiffs' famous trademarks. *Id.* In addition, Perplexity's use of Plaintiffs' trademarks constitutes false designations of origin and confuses and deceives Perplexity users into believing that the hallucinations and/or undisclosed omissions are associated with, sponsored by, or approved by Plaintiffs. *Id.*

## III.    LEGAL STANDARDS

When considering a Rule 12(b)(6) motion to dismiss, a court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face," meaning that the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Courts have "been strictly proscribed" from "subject[ing] copyright plaintiffs to a heightened level of pleading." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013); *see also Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 340 (S.D.N.Y. 2015) ("[C]opyright claims are not subject to a heightened pleading standard."). Courts may consider the facts set forth on the face of the complaint as well as "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

## IV.    ARGUMENT

### A.    PLAINTIFFS SUFFICIENTLY ALLEGE PERPLEXITY'S DIRECT INFRINGEMENT IN GENERATING INFRINGING OUTPUTS (COUNT II).

Plaintiffs state a claim for direct infringement and properly allege that Perplexity engaged in volitional conduct through its creation of an index containing copyrighted content and use of a RAG process that appropriates Plaintiffs' content to generate infringing outputs. In its Motion to Dismiss, Perplexity ignores that its "Answer Engine" outputs verbatim or substantially similar copies of Plaintiffs' content *precisely because Perplexity built its system using Plaintiffs' content.* Perplexity, not its users, determines the manner in which Perplexity crawls, scrapes, or otherwise obtains Plaintiffs' content as part of its RAG process that generates infringing outputs. Times FAC ¶ 2, Tribune FAC ¶ 2 (Perplexity "uses advanced AI to search the internet in real-time," then

"distills this information into a clear, concise summary"); Times FAC ¶ 4, Tribune FAC ¶ 4 (Perplexity "makes copies of that content to store in its 'AI-First' search index and to feed to its suite of retrieval-augmented generation or 'RAG' products"); Times FAC ¶ 64, Tribune FAC ¶ 42 (describing Perplexity's "exabyte-scale index and crawling apparatus" and curation of RAG Content to generate "answers" to user prompts). Much like Judge Stein observed with respect to OpenAI's generative AI products in *New York Times Co. v. Microsoft Corp. et al.*, Perplexity's Answer Engine is "a product that itself was built on purportedly appropriated works"—namely, Perplexity "appropriated plaintiffs' works, created the tangible medium upon which those protected works were recorded, . . . and provided third-party infringers with both the means of infringing and the works from which to do so." 777 F. Supp. 3d 283, 309 (S.D.N.Y. 2025) (internal citations and quotations omitted). When a user poses a query to Perplexity, the Perplexity product then consults and copies Plaintiffs' copyrighted content in formulating the response.

"To establish a claim of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (citations omitted). To be liable for direct infringement, a defendant must have engaged in "volitional conduct" that "causes the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (cleaned up).

This Court and the Second Circuit have emphasized that infringers engage in volitional conduct when their software systems have an active, intentional role in curating copyrighted information or providing the infrastructure for its delivery, which is exactly what Perplexity has done here. In *Capitol Recs., Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703 (S.D.N.Y. 2014), this Court upheld a jury's finding that MP3tunes—an integrated music service that allowed users to

store, stream, or download music from online storage "lockers"—was liable for direct infringement of plaintiffs' copyrights in album cover art. *Id.* at 711, 720. The Second Circuit affirmed. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC.*, 844 F.3d 79 (2d Cir. 2016). Both courts rejected MP3tunes's argument that it lacked volition "because the retrieval of that art was not directed by MP3tunes but rather obtained from Amazon.com at the direction of the user when the user selected a song." *Id.* at 96. Instead, the courts recognized that the software "was designed to retrieve one aspect of a copyrighted work (the album art) whenever a user uploaded another aspect of a copyrighted work (the song)." *Id.* "In other words, the system retrieved a copyrighted item that a user did not request, frequently without the user's knowledge of the copyrighted nature of the item. This constituted enough evidence, in [the court's view], that copying of the cover art was directed by MP3tunes, not users." *Id.*

Perplexity's conduct is within the scope of what this Court has found to be volitional in other cases. *See, e.g.*, *Fox News Network, LLC v. TVeyes, Inc.*, 883 F.3d 169, 181 (2d Cir. 2018) (finding defendant engaged in "clear" volitional conduct when it, *inter alia*, "decide[d] what audiovisual content to record"); *ReDigi Inc.*, 934 F. Supp. 2d 640 (holding an "online marketplace for digital used music" engaged in volitional conduct). Here Plaintiffs have alleged—in great detail and often quoting Perplexity's own (pre-suit) descriptions—that Perplexity: (1) has built a search index comprising billions of webpages, including Plaintiffs'; (2) updates that index every few hours; and (3) copies and uses Plaintiffs' content to provide responses to user queries. *See, e.g.*, Times FAC at ¶¶ 64-66; Tribune FAC ¶¶ 42-44. Moreover, Plaintiffs have provided examples of Perplexity's "Answer Engine" retrieving their copyrighted content without a request from a user for that content as part of its RAG process, such as when a user requests content on a news topic but does not mention Plaintiffs or the titles of their articles in the query. *See, e.g.*, Times FAC ¶

8

92; Tribune FAC ¶ 65.

Perplexity's Answer Engine also "copies copyrighted material without a request from the user." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 459 (S.D.N.Y. 2025) (emphasis added). And just like the online platform in *ReDigi*, Perplexity chooses to scrape Plaintiffs' copyrighted content and copy that content for use in the RAG process; "provide[s] the infrastructure" for users to receive infringing content by selecting that content for its RAG process in the first place; and "affirmatively" generates infringing responses to users' requests. Times FAC ¶ 76; Tribune FAC ¶ 54. As this Court concluded about the *ReDigi* platform, Perplexity's "fundamental and deliberate" role has "transformed it from a passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement." 934 F. Supp. 2d at 657 (cleaned up).

Perplexity seeks to rely on cases involving "automated systems" or passive platforms to which users bring the copyrighted content and that strictly execute users' requests—like a photocopy machine.[2] But Perplexity cannot avail itself of this line of cases because Perplexity has chosen to build its products based on copyrighted content that Perplexity itself copied. Perplexity

---

[2] *DistroKid, LLC*, 766 F. Supp. at 462 (cited in Mot. at 9) (music distribution website was comparable to a "copy shop" when it enabled users to upload music files and populate them to websites chosen by the user); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550–51 (4th Cir. 2004) (cited in Mot. at 9) (internet service providers act as "traditional copying machine[s]" when they are "transmission facilit[ies]" that serve as "conduits from or to would-be copiers and have no interest in the copy itself"); *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-CV-3610 (JGK)*, 2022 WL 837596, at *4 (S.D.N.Y. Mar. 21, 2022) (cited in Mot. at 12) (YouTube did not engage in volitional conduct when a third party posted videos to YouTube that copied the plaintiff's own uploaded videos); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724,751 (S.D.N.Y. 2012) (cited in Mot. at 12), (photo printing website did not engage in volitional conduct when it displayed an artist's photo transmitted from another website); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 733-34 (9th Cir. 2019) (cited in Mot. at 9) (finding no volitional conduct as to set of photos that it did not "select" or "exercise control over," but engaged in volitional conduct as to another set of photos that its own moderators had "selected and tagged" for display).

deliberately copies Plaintiffs' works, curates that copied content, and responds to user queries using a RAG process that uses the copied content in ways that exceed the user's explicit control.

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,* 536 F.3d 121 (2d Cir. 2008) ("Cablevision"), the case upon which Perplexity principally relies, is inapt as it involved a passive platform that bears no resemblance to Perplexity's "Answer Engine." In that case, Cablevision offered a digital video recorder ("DVR") system that allowed its users to record programs broadcast by individual television channels. Owners of copyrighted programs sued, alleging that Cablevision directly infringed their copyrights by offering the DVR system. *Id.* at 124. The Second Circuit found that Cablevision did not engage in sufficient volitional conduct for direct liability because the user, not Cablevision, selected which precise programs to record. *Id.* at 131. The court found: "In determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Id.* When examining the specifics of the DVR system at issue, the court noted that while Cablevision has control over the content recorded by customers, this control is limited to the channels available to the customer and Cablevision has "no control over what programs are made available on individual channels or when those programs will air, if at all." *Id.* at 132. The court contrasted this with the level of control in the video-on-demand ("VOD") context, "where it actively selects and makes available beforehand the individual programs available for viewing." *Id.*[3]

---

[3] The facts in *Lopez v. Bonanza.com*, *Inc.,* No. 17-CV-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) (Preska, J.), are even less applicable than *Cablevision*. In that case, this Court held that "a third-party user's mere 'display of copyrighted images on a defendant's website does not demonstrate volition' by the defendant." *Id.* at *22 (citation omitted).

Conversely, here it is Perplexity, not the user, that selects and copies Plaintiffs' copyrighted content. Perplexity's answer engine is thus more akin to MP3tunes's software (or a juke box pre-loaded with unauthorized copies of copyrighted songs) than Cablevision's DVR system for at least three different reasons. *First*, the FACs allege that Perplexity's GenAI products supply unauthorized copies of Plaintiffs' works prior to any user prompt. Even before a user submits a prompt to Perplexity's chatbot, Perplexity has sent out crawlers (often "undeclared" and "stealth") to Plaintiffs' websites to scrape Plaintiffs' copyrighted content. Times FAC at ¶¶ 62-64; *see also id.* at ¶¶ 74–76; Tribune FAC at ¶¶ 41-42; *see also id.* at ¶¶ 52–54. Also prior to a user's query, Perplexity has "ma[de] copies of that content to store in its 'AI-First' search index to feed its suite of retrieval-augmented generation." Times FAC at ¶ 4; Tribune FAC at ¶ 4. "Perplexity then repackages the original content in written responses to users." *Id. Second*, the FACs allege "Perplexity uses its Perplexity-User crawler to crawl and scrape Times Content, including from The Times's website, in real-time to feed to its GenAI Products." Times FAC at ¶ 75; Tribune FAC at ¶ 53. *Third*, Plaintiffs allege specific examples of Perplexity's chatbot copying Plaintiffs' materials without a user specifically requesting Times or Tribune content. *See* Times FAC at ¶ 92; Tribune FAC at ¶ 65. Accordingly, unlike the automated platform in Cablevision, Perplexity actively scrapes and copies Plaintiffs' content before a user submits a prompt, and then re-copies and repackages Plaintiffs' content after the user submits a prompt, sometimes doing so even when the prompt does not specifically request Plaintiffs' content.

Judge Stein's decision in *New York Times Co. v. Microsoft Corp.,* 777 F. Supp. 3d 283, 305 (S.D.N.Y. 2025), addressing the functionality of similar GenAI products, is instructive. In denying defendants' motion to dismiss plaintiffs' contributory infringement claims, Judge Stein distinguished the defendants' LLMs from the video tape recorder considered in *Sony Corp. of Am.*

11

*v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984):

> **First, in *Sony* there was no "ongoing relationship between the direct infringer and the contributory infringer at the time the infringing conduct occurred."** *Sony*, 464 U.S. at 437, 104 S.Ct. 774. Here, however, an "ongoing relationship" exists between defendants and end users, via defendants' LLM outputs that respond to end users' prompts. *Cf. id.* at 438, 104 S.Ct. 774 ("The only contact between Sony and the users of [the VTRs] occurred at the moment of sale."). **Second, the VTR[4] was not a product that itself was built on purportedly appropriated works, as are defendants' products here.** *Cf. id.* at 421, 104 S.Ct. 774 (describing defendant as a distributor of "copying equipment").

*New York Times*, 777 F. Supp. 3d at 309 (emphasis added). Although neither OpenAI nor Microsoft moved to dismiss output-based claims for lack of volitional conduct, Judge Stein's discussion of the way LLM products function is relevant here. Like the LLM at issue in *New York Times*, Perplexity has an "ongoing relationship" with its end users. *Id*. Perplexity also provides its end users "with both the means of infringing and the works from which to do so." *Id.* When considering substantially similar products to Perplexity's, Judge Stein concluded that the LLMs in that case are active participants in the process of copyright infringement. *Id.*; *Cf. ReDigi*, 934 F. Supp. 2d at 657.

As an active participant that has copied millions of Plaintiffs' copyrighted works and engages in ongoing relationships with its users, many of whom are paid subscribers, Perplexity should not be permitted to evade liability by arguing that "the user made me do it."

## B.   PLAINTIFFS ARE NOT REQUIRED TO PLEAD ALL POSSIBLE EXAMPLES OF PERPLEXITY'S INFRINGING OUTPUTS (COUNT II).

Plaintiffs' allegations, which include many specific examples of Perplexity's infringement, surpass the bar for stating a claim for copyright infringement. Perplexity urges this Court to adopt a new pleading standard, requiring Plaintiffs to allege every single example of every single

---

[4] "VTR" is a video tape recorder.

instance of infringement. *See* Mot. at 13. No rule or case requires such a heightened pleading standard. Nor could it, because the full extent of Perplexity's infringing output is "in the sole possession, custody, and control of Perplexity," Times FAC at ¶ 110; Tribune FAC at ¶ 78. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) (finding in certain circumstances, "the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony.").

"To survive dismissal, the complaint must allege: (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." *Jefferies, LLC*, 101 F. Supp. at 338 (cleaned up). With respect to the fourth element, Plaintiffs are required only to explain *how* Perplexity infringed their copyrighted works. *See Warren*, 952 F. Supp. 2d at 618 (plaintiff must provide "sufficient notice to [defendant] as to how the copyrights at issue have been infringed," but is not required to "specify how each *particular* photograph has been infringed") (emphasis added).

Plaintiffs did so in detail. For Count II, Plaintiffs allege that Perplexity infringes Plaintiffs' copyrighted content when its RAG process copies Plaintiffs' content and uses that content to produce outputs that contain that content. *See, e.g.*, Times FAC. at ¶¶ 74-81; Tribune FAC at ¶¶ 52-58. Plaintiffs alleged that "Perplexity has unlawfully copied millions of copyrighted" articles belonging to Plaintiffs. Times FAC at ¶ 5; Tribune FAC at ¶ 6. "Perplexity generates the 'answers' to user prompts and questions by using content it retrieves from its search index or obtains in real-time from available sources." Times FAC at ¶ 64; Tribune FAC at ¶ 42. The answers that Perplexity generates "often contain verbatim reproductions" of The Times's and Chicago Tribune's content. Times FAC at ¶ 82; Tribune FAC at ¶ 59. "At other times, the outputs are

13

reworded into text that closely paraphrases or summarizes in detail [Plaintiffs'] copyrighted works." *Id*. In multiple examples, the FACs lay out Plaintiffs' content and Perplexity's unauthorized reproductions side by side. Times FAC at ¶¶ 85-108; Tribune FAC at ¶¶ 62-77. These examples are evidence that Perplexity's GAI Products produce either verbatim copies or substantially similar (and substitutive) outputs. Plaintiffs have also attached to their FACs lists of the works that Plaintiffs allege have been copied and infringed. Times FAC, Ex. A; Tribune FAC, Ex. A.

In advocating for an amended pleading standard, Perplexity relies on distinguishable cases involving a much smaller number of creative works from which the district court could make a substantial similarity finding at the motion to dismiss stage. *See Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 152 (S.D.N.Y. 2024) (cited in Mot. at 14) (two television shows' alleged copying of reality television plot and concept); *Shull v. TBTF Prods. Inc.*, No. 18-CV-12400, 2019 WL 5287923, at *1 (S.D.N.Y. Oct. 4, 2019) (cited in Mot. at 14) (one television show's alleged copying from one book); *Abdin*, 971 F.3d at 60 (cited in Mot. at 14) (one television show's copying from one video game); *Hines v. Roc-A-Fella Records, LLC*, No. 19-CV-4587, 2020 WL 1888832, at *1 (S.D.N.Y. Apr. 16, 2020) (cited in Mot. at 13) (two modern songs' copying of one older song); *Larball Publ'g Co., Inc. v. Lipa*, No. 22-CV-1872, 2023 WL 5050951, at *1 (S.D.N.Y. Aug. 8, 2023) (cited in Mot. at 14) (one song's copying of two older songs).

Here, by contrast, Plaintiffs have alleged that Perplexity has copied "all or virtually all" of their copyrighted works through its massive crawling, scraping, and copying of the Internet. Times FAC at ¶ 110, 64; Tribune FAC at ¶ 78, 41. Perplexity requests that this Court add a requirement that plaintiffs provide specific examples of every instance of infringement—a request this Court has repeatedly rejected. For example, in *Jefferies, LLC*, 101 F. Supp. 3d 332, this Court held that

14

the plaintiffs had stated a claim by alleging that copyrighted publications subject to user restrictions were "regularly downloaded from Plaintiffs' website" on several different computers affiliated with the defendant, all using the same user login. *Id.* at 340. "To require more at this stage is to require evidentiary detail." *Id.*; *see also Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (finding complaint sufficiently pled where "Plaintiff identifie[d] the publication and information regarding the license limits" but not "for all instances of infringement"); *Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392, 2013 WL 1386968, at *3 (S.D.N.Y. Apr. 5, 2013) (rejecting argument that plaintiff was required to plead the specific infringement that occurred with respect to each particular photograph).

Plaintiffs have alleged that the many "examples of verbatim or otherwise substantially similar or substitutive outputs **[**that are specifically identified in the FACs] create a reasonable inference that Perplexity is generating massive amounts of such outputs in response to users' prompts, from all or virtually all of the [Plaintiffs'] valuable, copyrighted works." Times FAC at ¶ 110; Tribune FAC at ¶ 78. Perplexity argues that the lack of specific examples as to each registration Plaintiffs' appended to their FACs means that the Court cannot assess the "substantial similarity" between Plaintiffs' copyrighted content and Perplexity's unauthorized copies. *See* Mot. at 13–14. This argument ignores Plaintiffs' allegations and misconstrues the case law. Perplexity's request to amend this Circuit's pleading standard should be rejected and its request to dismiss Count II of Plaintiffs' FACs should be denied.

### C. PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT LIABILITY (COUNT III).

Plaintiffs argue that "Perplexity is secondarily liable for unlawfully reproducing, displaying, distributing, and preparing derivatives of [Plaintiffs'] copyright works under each of three theories: contributory infringement by material contribution, contributory infringement by

inducement, and vicarious infringement." Times FAC ¶¶ 145-51; Tribune FAC ¶¶ 110-16. Perplexity argues that Plaintiffs' contributory infringement and vicarious infringement claims should be dismissed because, respectively, Plaintiffs "fail to plausibly allege that Perplexity induced its users to infringe Plaintiffs' works or tailored its services to that alleged infringement" (Mot. at 15) and the Complaints "lack sufficient allegations that Perplexity has a direct financial interest in any alleged infringement" (Mot. at 20). Both arguments fail for the reasons set forth below.

### 1.    Plaintiffs Properly Allege That Perplexity Induced Infringement.

Under the Supreme Court's recent decision in *Cox*, Plaintiffs have properly alleged that Perplexity induced infringement. 146 S. Ct. at 967. In *Cox*, the Court held that to find a service provider contributorily liable for a user's infringement, the provider must have intended that its service be used for infringement. *Id.* A provider's intent can be shown if either (a) the party induced infringement or (b) if the service is tailored to that infringement. *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). "A provider induces infringement if it actively encourages infringement through specific acts." *Id.* (citation omitted). Here, Plaintiffs have pleaded a claim for induced infringement.

The accused service in *Cox* was an Internet service provider ("ISP"). In finding that the ISP did not induce its subscribers to infringe, the Court noted that the plaintiff had "provided no evidence of express promotion, marketing, and intent to promote infringement." *Id.* at 968 (quotations omitted) (citing *Grokster*, 545 U.S. at 926, 930). The ISP in *Cox* is readily distinguishable from Perplexity, which has "promoted and marketed" their products "as a tool to infringe copyrights." *Id.* at 959 (citing *Grokster*, U.S. 545 at 926).

In *Grokster*, the Court held "that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster

16

infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 919. The Court noted that *"[t]he classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." Id.* at 937 (emphasis added). The Court in *Grokster* highlighted three elements from which a reasonable factfinder could infer that the service provider intended to foster infringement. *Id.* at 916. *First*, the internal communications and advertising designs obtained in discovery revealed an intent to target a community well-known for copyright infringement. *Second*, the service provider did not attempt to develop filtering tools or other means of diminishing the use of its products for infringement. *Id. Third*, the service provider's business model depended on high-volume use of its software, which was overwhelmingly infringing. *Id.*

This Court's ruling declining to dismiss an induced infringement claim in another AI case is instructive. In *Advance Local Media LLC v. Cohere Inc.*, Judge McMahon held that the plaintiff publishers properly pleaded contributory copyright infringement when plaintiffs "provide[d] numerous examples of Cohere promoting [its LLMs'] . . . ability to conduct 'a web search to access the latest news about trends and competitors'" and "touted its ability to 'keep you up to date with the latest news.'" No. 25-CV-1305, 2025 WL 3171892, at *6 (S.D.N.Y. Nov. 13, 2025) (citations omitted). Further, this Court noted that the plaintiffs alleged that "Cohere's Chat interface suggests to consumers that its models provide summaries of the latest news articles and, in the free online demo of [its suite of LLMs], even 'prepopulates the interface with a request to summarize recent technology news, inviting prospective customers to use the models to access news stories.'" *Id.* (citation omitted).

The Times and Chicago Tribune have pleaded a classic claim of induced infringement. *First*, much like the LLMs at issue in *Cohere*, through its slogans and public statements made by

17

its executives, Perplexity "broadcasted a message designed to stimulate others to commit violations." *Grokster, Ltd.*, 545 U.S. at 916; *see also Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 426 (S.D.N.Y. 2011) (holding a service provider's efforts to attract infringing users is evidence that a service is intended to encourage infringement). The FACs allege that Perplexity's marketing emphasized that one of its core functions is to provide news. As described in the FACs, Perplexity describes itself as "leverag[ing] sophisticated AI to interpret your question" and then "search[ing] the internet, gathering information from authoritative sources like articles, websites, and journals." Times FAC at ¶ 64; Tribune FAC at ¶ 42; *See also* Times FAC ¶ 62 (citing Perplexity marketing materials describing users' ability to search for "the latest news in AI research" and receiving back from Perplexity an answer copied from "five different news websites").

To provide news content, Perplexity "built a search index, or database, comprising 'hundreds of billions' of webpages that it crawled, scraped, and copied from the internet to use as part of the RAG process." Times FAC at ¶ 64; Tribune FAC at ¶ 42. In curating this content, Perplexity targets high-quality news. Times FAC at ¶ 67 (Perplexity's CEO explained that "sites like *The New York Times* are generally more reliable than Substack posts."); Tribune FAC at ¶ 45. Perplexity advertised its products by emphasizing it will not produce original content, only content it has retrieved. Times FAC at ¶ 69; ("The principle in Perplexity is you're not supposed to say anything that you don't retrieve"); Tribune FAC at ¶ 47.

Indeed, one of Perplexity's principal marketing slogans was that its products allowed users to "Skip the links"; that is, an express encouragement for users to rely on Perplexity for news content instead of news websites, like those of Plaintiffs. Times FAC. at ¶ 3; Tribune FAC at ¶ 3; *see Nazemian et al. v. Nvidia Corp.*, No. 24-cv-01454-JST, ECF 303 at 10 (N.D. Cal.) (denying

18

motion to dismiss contributory liability claim and holding "it is sufficient that Plaintiffs allege that defendant 'instruct[ed] how to engage in an infringing use' and 'express[ed] an affirmative intent that the product be used to infringe,' such as by designing a tool specifically to promote the infringement.") (citing *Grokster*, 545 U.S. at 915).

*Second*, as alleged in the FACs, Perplexity was aware of substantial infringement by its users and yet continued to encourage this infringement. *Arista Recs. LLC*, 784 F. Supp. 2d at 426 (finding awareness of substantial infringement by users relevant to determining whether a defendant engaged in inducement of copyright infringement). In March 2024, The Times notified Perplexity of its concern that Perplexity was using The Times's intellectual property without permission and instructed Perplexity to stop all unauthorized access. Times FAC at ¶ 58. Rather than cease its conduct, Perplexity continued its unauthorized use of Plaintiffs' content and in response, The Times "hard-blocked" PerplexityBot and disallowed its access in The Times's robots.txt file. *Id.* Similarly, on October 14, 2025, counsel for the MediaNews Group ("MNG"), of which the Tribune is a member, wrote to Perplexity to obtain assurance that "MNG's proprietary content has not been and is not being used by Perplexity AI, Inc." Tribune FAC at ¶ 36. During this time, Perplexity was already defending itself against other lawsuits alleging the same type of infringement alleged by Plaintiffs. Times FAC. at ¶ 26; Tribune FAC at ¶ 23. Despite this notice, Perplexity did not cease offering infringing services or employ tools to mitigate its infringement. *Grokster*, 545 U.S. at 917 (finding that failure to develop filtering tools or other mechanisms to diminish infringing activity is evidence of intent); *Arista Recs. LLC*, 784 F. Supp. 2d 398 at 426.

*Third*, as alleged in the FACs and detailed further below, Perplexity's business model relies on attracting a high number of users to its products, which are infringing, and incentivizing them to use paid tiers of Perplexity's products, Times FAC ¶ 151; Tribune FAC ¶ 116. *See, e.g.*, *Arista*

19

*Recs. LLC*, 784 F. Supp. 2d at 429 (finding LimeWire depended on infringement for success of its business where its "source[] of revenue depend[ed] on LimeWire attracting massive user population generated by its infringement-enabling features.").

In sum, Plaintiffs properly alleged facts to establish a "classic instance of inducement" by advertisement or solicitation. *Grokster*, 545 U.S. at 937. Perplexity's request that Plaintiffs' contributory liability claim be dismissed should be denied.

> 2.    Plaintiffs Sufficiently Allege Perplexity's Direct Financial Interest in its Infringing Conduct to Support the Vicarious Copyright Infringement Claims.

Perplexity also argues that Plaintiffs' vicarious copyright infringement claims should be dismissed because Plaintiffs failed to allege that Perplexity has a direct financial interest in the alleged infringement. Mot. at 20. Not so.

To establish vicarious liability, a plaintiff must show that the defendant had (1) "the right and ability to supervise the infringing activity" and (2) a "direct financial interest" in such activity. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also MP3tunes LLC*, 844 F.3d 79. The second element of a vicarious infringement claim requires a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." *Arista Recs.*, 784 F. Supp. 2d at 435 (internal quotation marks and citations omitted). "The financial benefit need not be tied directly to sales of the infringing goods, nor must it be substantial" and "exists where the availability of infringing material acts as a draw for customers." *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). Regardless of the nature of the "draw," "the crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant. If copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may be profit from

20

infringement." *In re Frontier Commc'ns Corp.*, 658 B.R. 277, 294 (Bankr. S.D.N.Y. 2024).

*MP3tunes* is once again instructive. 844 F.3d 79. There, the defendant MP3tunes provided a "storage locker" service, which charged users a fee to store music on the MP3tunes server. *Id.* at 86. MP3tunes also owned and operated a second website that allowed users to search for free music on the internet and then load songs into their MP3tunes lockers. *Id.* Users could store a certain amount of music for free and then purchase additional storage space for tiered fees. *Id.* In upholding the jury's vicarious liability verdict, the Second Circuit noted that the defendant used the second website to "attract free users to MP3tunes whom MP3tunes could thereafter 'upsell' to premium lockers" and that the defendant "had an obvious and direct financial interest in infringement that drew subscribers to MP3tunes.com." *Id.* (citations and internal quotations omitted).

Similarly, Perplexity "draws" consumers to its products by advertising its ability to provide high-quality news content from reliable sources. *See also Rams*, 202 F. Supp. 3d at 385. For example, Perplexity described itself as "streamlining your information gathering by delivering the precise knowledge you need without the extra steps and clicks," and as recently as August 2024, boasted its chatbot allowed users to "Skip the links." Times FAC at ¶ 3; Tribune FAC at ¶ 3. Perplexity's C.E.O. also gave an interview in which he described Perplexity as "closer to Apple News with some protections for users. So say they can have AIs also read those articles." Times FAC at ¶ 68; Tribune FAC at ¶ 46. He similarly emphasized Perplexity's ability to provide users, licensees, and potential licensees comprehensive responses based on high-quality news content, such as that from *The New York Times*. Times FAC ¶ 151; Tribune FAC ¶ 116. The unambiguous import of these statements is that people should use Perplexity because Perplexity will deliver news content derived from "links," including content protected by copyright.

21

Not only does Perplexity's infringing conduct act as a draw to its products, but users are more likely to purchase a paid Perplexity plan, or use the free product more, if they obtain the high-quality news content they were promised by Perplexity. *See* Times FAC. at ¶ 5; Tribune FAC at ¶ 5. Like in *MP3tunes*, by providing infringing content, Perplexity attempts to "upsell" Perplexity users to its paid plans. 844 F.3d at 86. And a paid user is more likely to remain one, or select a higher-priced plan, if she continues to obtain the same high-quality news content. *Id.*

Plaintiffs have therefore properly alleged Perplexity's direct financial interest in its infringing conduct, *see* Times FAC at ¶ 151; Tribune FAC at ¶ 116, and Perplexity's request that this Court dismiss Plaintiffs' vicarious liability claims should be denied.

### D. THE TIMES'S FAC PROPERLY PLEADS THE TRADEMARK CLAIMS (COUNTS IV AND V)[5]

Perplexity's motion to dismiss Counts IV and V should be denied because the Times's FAC adequately pleads all elements of the trademark claims asserted by the Times Plaintiffs in Count IV for Perplexity's violation of 15 U.S.C. §§ 1125(a) and (c), and Count V for Perplexity's violation of 15 U.S.C. § 1114(1).

#### 1. The FAC properly pleads the trademark claims for The Times

##### (a) *The FAC alleges that Perplexity improperly uses The Times's trademarks in hallucinated outputs*

The FAC alleges that Perplexity uses The Times's trademarks in connection with the output of fake articles that falsely identify The Times as the source. Times FAC ¶¶ 114, 116-118, 156-160, and 167-168. Specifically, the FAC states that Perplexity "*generates hallucinations in its outputs and mis-attributes that inaccurate text to Plaintiffs using Plaintiffs' trademarks*." Times FAC ¶ 116 (emphasis added). In addition, the FAC included an example of a hallucination falsely

---

[5] Perplexity has not moved to dismiss any of Tribune's trademark claims.

attributed to Plaintiffs Wirecutter and The Athletic. Times FAC ¶¶ 117-118. Plaintiffs' allegations are more than sufficient to state a claim for trademark infringement, dilution, and unfair competition.

Notwithstanding these allegations of trademark infringement, dilution, and unfair competition by Perplexity, Perplexity argues that the FAC was also required to show examples of Perplexity's hallucinatory output falsely attributed to The Times, in addition to the examples in the FAC of hallucinations that Perplexity attributed to Wirecutter and The Athletic. Again, Perplexity asks this Court to impose a new pleading standard requiring Plaintiffs to allege every single example of every single instance of infringement. *See* Mot. at 24. No rule or case requires such allegations as demonstrated by Perplexity's failure to cite any support for such an absurd standard.

Perplexity also incorrectly argues that the FAC alleges that Perplexity used The Times's trademarks only in connection with accurate outputs of its articles and thus it cannot be liable for the trademark claims in Counts IV and V. Mot. at 25-26. As stated above, this is not correct as the FAC alleges that Perplexity uses The Times's trademarks in connection with the output of fake or misleadingly excerpted articles.

(b)    *The FAC alleges that Perplexity uses The Times Plaintiffs'*
*Trademarks in commerce*

In determining whether a plaintiff has satisfied the "use in commerce" requirement, courts ask "whether the trademark has been displayed to consumers in connection with a commercial transaction." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013). The FAC properly alleges that Perplexity used The Times Plaintiffs' marks in commerce since the hallucinations are displayed to Perplexity's customers. Times FAC ¶¶ 6-7, 114, 118, 155-163, and 167-168. For example, The FACs state, "Perplexity's use of Plaintiffs' trademarks alongside hallucinations is a

23

commercial transaction that is likely to divert traffic, sales and subscriptions from Plaintiffs, which commercially harms Plaintiffs." Times FAC ¶ 116.

Perplexity argues that the Times Plaintiffs were required to allege that Perplexity uses their marks in advertising materials. Mot. at 28. In so arguing, Perplexity misstates Judge McMahon's recent ruling in *Cohere*. In that case, the Court found that Cohere's use of the plaintiffs' marks in advertising was a "use in commerce." *Id.* at *8. Perplexity tellingly omits that advertising was just one of the examples of use in commerce upon which the Court relied. *Id.* at *8. The Court found that Cohere's use of the plaintiffs' trademarks constituted a "use in commerce" in part because Cohere's use of the plaintiffs' trademarks would "likely to divert traffic, sales, and subscriptions from [plaintiffs]." *Id.* This is precisely the situation here and the Times Plaintiffs have adequately alleged that Perplexity used their trademarks in commerce.

(c)     *Perplexity's hallucinations are not Nominative Fair Use*

Perplexity also tries to excuse its unlawful behavior by claiming that any use of The Times's trademarks was nominative fair use.  Mot. at 25-27.  However, Perplexity's conduct does not implicate nominative fair use. "Nominative use is a 'use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services.' It is called 'nominative' use because it 'names' the real owner of the mark." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016). Plaintiffs allege that Perplexity uses The Times's trademarks in connection with the output of fake articles, falsely identifying The Times as the source of that fraudulent material. Times FAC ¶¶ 114, 116-118, 155-163, and 167-168. When Perplexity uses The Times's trademarks in hallucinated articles, Perplexity does not accurately describe the "relationship between [Plaintiffs'] and defendant's products or services." *Int'l Info. Sys. Sec. Certification Consortium, Inc.*, 823 F.3d at 168. It therefore cannot be nominative fair use.

24

Perplexity's argument that the FAC only alleges that Perplexity used The Times trademarks in connection with accurate outputs of articles is not correct. The FAC specifically describes how Perplexity "*generates hallucinations in its outputs and mis-attributes that inaccurate text to Plaintiffs using Plaintiffs' trademarks*." Times FAC at ¶ 116 (emphasis added). Moreover, Plaintiffs provide an example of a hallucinated output falsely attributed to Wirecutter and The Athletic. *Id.* at 117-118. Thus, Perplexity's nominative fair use argument does not apply. *See Hudson Furniture, Inc. v. Mizrahi*, No. 20-CV-4891, 2023 WL 6214908, at *9-10 (S.D.N.Y. Sept. 25, 2023) (rejecting nominative fair use where defendant did not actually offer plaintiff's products). In *Cohere,* the Court similarly denied a motion to dismiss and held that the nominative fair use defense did not apply because the complaint alleged that Cohere used the plaintiffs' marks to "falsely attribute hallucinated articles to [Plaintiffs], implying a false association." *Cohere,* 2025 WL 3171892, *10. That is precisely the situation in the present case, and a denial of the motion to dismiss is likewise warranted.

        (d)       *The FAC alleges that Perplexity engaged in unfair competition, dilution and infringement of all pleaded registrations*

Perplexity argues that the FAC did not allege violations of The Times's Trademark Registration Nos. 227,904, 2,035,130. 2,120,865, 3,613,812, 3,934,613, 3,934,612 and 4,454,848 because the FAC did not allege that Perplexity used the identical marks and goods in those registrations. In doing so, Perplexity misstates a basic premise of trademark law. The question in this case is whether Perplexity's use of The Times's trademarks creates a likelihood of confusion or dilution. "[E]xact identity of the marks is not the test of infringement." McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Fifth Edition § 23:20; *see, e.g.*, *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 962 (2d. Cir. 1996). The FAC states that

25

Perplexity's unlawful actions create a likelihood of confusion and dilution with The Times's pleaded registrations. *See* Times FAC ¶¶ 156-162 and 167-168. That is sufficient.

        2.      <u>The FAC properly pleads that the trademarks WIRECUTTER and THE ATHLETIC are famous for Dilution in Count IV</u>

Perplexity's Motion makes no arguments regarding the sufficiency of the FAC as to the claims of Plaintiffs Wirecutter and The Athletic for violations of 15 U.S.C. § 1125(a) in Count IV and 15 U.S.C. § 1114(1) in Count V of the FAC. Thus, the Motion seeks dismissal only of the claim for dilution under 15 U.S.C. § 1125(c) in Count IV.

To the extent that Perplexity claims that arguments regarding The Times for 1125(a) and 1114(1) also apply to Wirecutter and The Athletic, the motions should be denied for the reasons stated in Section II.D.1.

        (a)      *WIRECUTTER and THE ATHLETIC are famous under 1125(c)*

The FAC properly alleges that the trademarks WIRECUTTER and THE ATHLETIC are famous and Plaintiffs sufficiently pleaded the dilution claim in Count IV for these marks under 15 U.S.C. § 1125(c). *See* Times FAC ¶¶ 9-10, 46-48. The FAC pleads each of the required elements for fame for WIRECUTTER and THE ATHLETIC. As this Court explained in *Ziff Davis et al. v. OpenAI et al.*, 25-cv-4315, Dkt. 300 at 11 (Stein, J.) (S.D.N.Y),

> A complaint plausibly alleges that a trademark is famous when the allegations include attributes of the mark such as nationwide recognition and respect, continuous and pervasive use of the mark, substantial investments in promoting and advertising the mark throughout the United States and internationally, significant publicity relating to the marks, and that products bearing the plaintiff's marks are sold throughout the United States."

At this stage, Plaintiffs need only plead sufficient facts to render it *plausible* that WIRECUTTER and THE ATHLETIC are famous. *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-CV-5105, 2014 WL 3950897, at *10 (S.D.N.Y. Aug. 13, 2014). The FAC pleads each of the required

26

elements for fame, including that WIRECUTTER and THE ATHLETIC are "widely recognized by the general consuming public of the United States," Times FAC ¶¶ 47-48, and "generate[ ] a substantial amount of revenue annually and [are] widely recognized by the general consuming public of the United States." *Id.*

Regarding WIRECUTTER, the FAC alleges that Wirecutter: (i) has operated under the WIRECUTTER trademark since 2011 (*Id.* ¶ 47); (ii) is a popular product review site which recommends the best products in dozens of categories (*Id.* ¶¶ 9 and 47); (iii) the WIRECUTTER trademark is protected by Federal Registration (*Id.* ¶ 111); (iv) journalists spend tens of thousands of hours conducting rigorous testing and research to produce a catalog of reviews (*Id.* ¶ 47); (v) is available on The Times's mobile applications and websites and is accessible to The Times's over 150 million registered users (*Id.*); (vi) averages 15 million unique visitors per month on its site (*Id.*); (vii) has 3.3 million email subscribers for its newsletters (*Id.*); (viii) was a finalist for two National Media Awards, one of the most prestigious honors in American journalism (*Id.*); (ix) generates a substantial amount of revenue annually and is widely recognized by the general consuming public as a source of reviews of the best products (*Id.*); and (x) is described by the 2025 Press Gazette's Future of Media Trends event as "the best place to go to get that information" about purchasing consumer products. (*Id.*)

Regarding THE ATHLETIC, which earlier this month won a Pulitzer prize, the FAC alleges that The Athletic: (i) has operated under THE ATHLETIC trademark since 2016 (*Id.* ¶ 48); (ii) is a digital publication that provides unrivaled sports journalism for fans across all major sports leagues and teams throughout the United States (*Id.*); (iii) THE ATHLETIC trademark is protected by Federal Registration (*Id.* ¶ 111); (iv) has a newsroom of more than 500 full-time writers, editors and producers (*Id.* ¶ 48); (v) a recognized leader in sports journalism serving avid sports fans who

value expert-informed analysis and in-depth insights that they cannot find anywhere else (*Id.*); (vi) is available on The Times's mobile applications and websites and is accessible to The Times's over 150 million registered users (*Id.*); (vii) has 16.9 million unique visitors per month on its site; (viii) 12 million subscribers have access to *The Athletic's* original sports reporting (*Id.*); and (ix) generates a substantial amount of revenue annually and is widely recognized by the general consuming public of the United States as a source of leading sports journalism (*Id.*).

Collectively, these facts sufficiently allege that WIRECUTTER and THE ATHLETIC are famous. *Ziff Davis*, 25-cv-4315, Dkt. 300 at 12 (finding FAC sufficiently alleges the MASHABLE mark as famous where, *inter alia*, the publication "had a reported average of 12.9 million monthly unique visitors" over the last twelve months and is "considered a leading source for technology and entertainment news worldwide, winning various awards, and generating a substantial amount of the total 2024 revenue"); *Car-Freshner Corp. v. Meta Platforms, Inc.*, No. 22-CV-1305, 2023 WL 7325109, at *23–26 (N.D.N.Y. 2023); *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 216 (S.D.N.Y. 2015). Moreover, courts in this Circuit tasked with evaluating the adequacy of a plaintiff's dilution claim under Rule 12 have repeatedly accepted much less than what has been pled here*. See, e.g.*, *Grand v. Schwarz*, No. 15-CV-8779, 2016 WL 2733133, at *5 (S.D.N.Y. 2016) (fame of mark BRAINSPOTTING sufficiently pled); *A.V.E.L.A., Inc.*, 131 F. Supp. 3d at 216*; Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 304–05 (E.D.N.Y. 2014) (fame of mark JAMES VAN PRAAGH sufficiently pled); *Car-Freshner Corp.*, 2023 WL 7325109 at *23–26 (fame of tree design mark sufficiently pled); *Lewittes v. Cohen*, No. 03-CV-189, 2004 WL 1171261, at *1 (S.D.N.Y. 2004) (fame of mark MICHAEL LEWITTES sufficiently pled); *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) (fame of mark ROOM IN A BOX sufficiently pled).

28

Perplexity's reliance on *CDC Newburgh* is misplaced. In that case, the plaintiff pled two or three conclusory statements with no underlying factual allegations. *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F.Supp.3d 205, 234-35 (S.D.N.Y. 2023). Also, while Perplexity cites Judge Stein's decision *In re Open AI, Inc. Copyright Infringement Litigation*, that decision does not support Perplexity's argument. In that case Judge Stein found that fame was properly pled for MASHABLE. *Id.* As to the other marks at issue, Lifehacker, CNET, ZDNET, PCMag, BabyCenter, and IGN publications, the Court found that fame had not been properly pled because, with respect to those specific marks, the plaintiffs had failed to allege specific facts in support of the purported fame. *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 25-CV-4315, 2025 WL 3635559, at *8 (S.D.N.Y. Dec. 15, 2025).

(b)    *WIRECUTTER and THE ATHLETIC are widely recognized by the general consuming public.*

As discussed above, the FAC alleges facts demonstrating that the WIRECUTTER and THE ATHLETIC trademarks are widely recognized by the general consuming public in the United States and have achieved widespread recognition and fame. Times FAC ¶¶ 47-48. Perplexity therefore offers nothing more than unsupported and conclusory statements that the marks have only achieved "niche fame" which are insufficient to counter the well-pleaded allegations of fame in the FAC. *See Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-CV-9308, 2022 WL 956223, *16 (S.D.N.Y. 2022).

Tellingly, Perplexity does not offer a definition of niche fame, since doing so would undermine its argument. Niche fame covers marks that are only recognized in "one geographic region," "one industry," "one line of business," or "only to professional buyers in one market." McCarthy on Trademarks and Unfair Competition at § 24:105; *see New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 318 (S.D.N.Y. 2010); *Malletier v. Dooney &*

29

*Bourke, Inc.*, 561 F. Supp. 2d 368, 391 (S.D.N.Y. 2008). Similarly, in *Burberry Ltd. v. Euro Moda, Inc.*, Judge McMahon stated that an example of niche fame would be a mark for a "catalogue selling rare plant specimens" that would be known to "100,000 collectors scattered throughout the country." No. 08-CV-5718, 2009 WL 1675080, *11 (S.D.N.Y. 2009) (citing *TCPIP Holding Co., v. Haar Commc'ns., Inc.,* 244 F.3d 88 (2d Cir.2001)).

The alleged recognition of WIRECUTTER and THE ATHLETIC goes far beyond the examples cited above, both having achieved widespread recognition among the general consuming public for purposes of dilution under 1125(c). The WIRECUTTER mark is used in connection with product reviews for all consumer products, including home goods, technology, health, and fitness. Times FAC ¶¶ 9 and 47. Thus, WIRECUTTER is used by the general consuming public and not solely within a single industry or line of business. Likewise, THE ATHLETIC mark is used in connection with all major sports throughout the United States. THE ATHLETIC mark has recently been used in connection with coverage of the Super Bowl and the Olympics, which are extraordinarily popular among the general public. Indeed, even the hallucination of THE ATHLETIC shown in Paragraph 118 of the FAC related to a false story by Perplexity regarding March Madness 2026, an event that is widely popular. Thus, Perplexity's argument regarding niche fame is meritless.[6]

---

[6] The niche fame cases cited by Perplexity, Mot. at 32, highlight the distinction between truly niche marks and famous marks like WIRECUTTER and THE ATHLETIC. Each involved products limited to a narrow industry or sold to professional buyers. *See Subversive Tools, Inc. v. Bootstrap Farmer, LLC*, No. 23-CV-6946, 2025 WL 3229122 (S.D.N.Y. 2025) (trade dress for a pruning tray design used by professional growers); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245 (S.D.N.Y. 2016) *aff'd*, 699 F. App'x 93 (2d Cir. 2017) (trade dress for an automated bag closure design popular with manufacturers in the baking industry); *Walker Wear LLC v. Off-White LLC*, 624 F.Supp.3d 424 (S.D.N.Y. 2022) (clothing designs in the narrow street wear genre); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547 (S.D.N.Y. 2018) (related to an Albanian language television station); *Luv N'Care Ltd. v. Regent Baby Products Corp.*, 841 F. Supp. 2d 753

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny Perplexity's Motion to Dismiss Counts II and III of The Times's and the Chicago Tribune's FACs, and Counts IV and V of the Times's FAC. In the alternative, Plaintiffs request that the Court grant Plaintiffs leave to amend the Complaint. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015).

Date: May 15, 2026                          By:  /s/ *Steven Lieberman*

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Jenny L. Colgate *(pro hac vice forthcoming)*
Alexandra S. Hughes *(admitted pro hac vice)*
Kristen J. Logan *(pro hac vice forthcoming)*
Bryan B. Thompson (6004147)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
ahughes@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com

*Attorneys for Plaintiffs*

---

(S.D.N.Y. 2012) (trade dress for a group of different designs, not product names, for baby products).

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 9,909 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.


Dated: May 15, 2026                    */s/ Steven Lieberman*
                                        Steven Lieberman


32