**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHICAGO TRIBUNE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PERPLEXITY AI, INC., <br><br> Defendant. | Case No. 1:25-cv-10094-LAP <br><br> **ORAL ARGUMENT REQUESTED** |
| THE NEW YORK TIMES COMPANY, WIRECUTTER, INC., and THE ATHLETIC MEDIA COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> PERPLEXITY AI, INC., <br><br> Defendant. | Case No. 1:25-cv-10106-LAP <br><br> **ORAL ARGUMENT REQUESTED** |

**CONSOLIDATED REPLY**
**IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTIONS TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINTS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT...................................................................................................... 2

      A.    Plaintiffs Fail To State A Direct Infringement Claim Based On Outputs
           (Count II) ................................................................................................... 2

           1.    *Cablevision* Forecloses Plaintiffs' Claim...................................... 2

           2.    Plaintiffs Fail To Plead Any Facts For Virtually All Registered
               Copyrights..................................................................................... 7

      B.    Plaintiffs Fail To State A Secondary Liability Claim (Count III) .......................... 9

           1.    Contributory Liability ................................................................. 9

           2.    Vicarious Liability ..................................................................... 11

      C.    The Times Plaintiffs Fail To Allege Viable Trademark Claims
           (Counts IV-V) ......................................................................................... 12

III.  CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advance Loc. Media LLC v. Cohere, Inc.*,
No. 25-CV-1305 (CM), 2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025)...............................9, 14

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)...................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................9

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013)....................................................................................6

*Cartoon Network LP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008).................................................................................. *passim*

*CDC Newburgh Inc. v. STM Bags, LLC*,
692 F.Supp.3d 205 (S.D.N.Y. 2023)......................................................................................15

*Cole v. John Wiley & Sons, Inc.*,
No. 11-cv-2090 (DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)........................................8

*Cox Communications, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026).............................................................................................................9, 10

*EMI Christian Music Group, Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016)................................................................................................4, 5, 12

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015)....................................................................................8

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)...................................................................................................................9

*Fox News Network, LLC v. TVEyes, Inc.*,
883 F.3d 169 (2d Cir. 2018)....................................................................................................6

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
157 F. Supp. 2d 234 (S.D.N.Y. 2000)....................................................................................15

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
 206 F. Supp. 3d 869 (S.D.N.Y. 2016)....................................................................14

*Hikma Pharms. USA v. Amarin Pharma, Inc.*,
 608 U.S. ___, 2026 WL 1593307 (June 4, 2026) ..................................10, 11, 13, 14

*In re OpenAI, Inc. Copyright Infringement Litig.*,
 No. 25-CV-4315, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ...........................15

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
 No. 16-cv-1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ................................13

*Kadrey v. Meta Platforms, Inc.*,
 No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ............................8

*Larball Publ'g Co., Inc. v. Lipa*,
 No. 22-cv-1872 (KPF), 2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023).......................8

*Lewittes v. Cohen, No. 03-CV-189*,
 2004 WL 1171261 (S.D.N.Y. 2004)......................................................................15

*Luv N' Care, Ltd. v. Regent Baby Products Corp.*,
 841 F. Supp. 2d 753 (S.D.N.Y. 2012).............................................................15, 16

*Marvullo v. Gruner & Jahr*,
 105 F. Supp. 2d 225 (S.D.N.Y. 2000).....................................................................8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005).............................................................................................10

*New York Times Co. v. Microsoft Corp.*,
 777 F. Supp. 3d 283 (S.D.N.Y. 2025)......................................................................6

*Pasuarello v. Crothall Healthcare, Inc.*,
 No. 21-cv-08732 (JLR), 2023 WL 5714165 (S.D.N.Y. Sept. 5, 2023)..................12

*Psychic Readers Network, Inc. v. A&E Television Networks, LLC*,
 No. 24-cv-8155 (DEH), 2025 WL 2532292 (S.D.N.Y. Sept. 3, 2025) ....................8

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
 No. 19-cv-1262 (LGS), 2020 WL 3050970 (S.D.N.Y. June 8, 2020).....................13

*Stevens v. Tomlin*,
 No. 23-cv-5898 (PKC) (LB), 2023 WL 5486247 (E.D.N.Y. Aug. 24, 2023) ..........7

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
 244 F.3d 88 (2d Cir. 2001)...................................................................................15

*TechnoMarine SA v. Jacob Time, Inc.*,
    No. 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012) .................................13

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) ..............................................................................8

*White v. DistroKid*,
    738 F. Supp. 3d 387 (S.D.N.Y. 2024) ..........................................................................11, 12

## STATUTES

15 U.S.C. § 1125(c)(2)(A) .............................................................................................15

## OTHER AUTHORITIES

4 Nimmer on Copyright § 13E.09 (2025) ...........................................................................6

## I.    INTRODUCTION

The crux of Plaintiffs' claims is that Perplexity "has copied millions of articles belonging to The Times and the Tribune" and built its answer engine with that freely available online content. Tribune Dkt. 43 ("Opp.") at 1.  Any copies Perplexity made by crawling the open internet are the subject of Plaintiffs' **input**-based infringement claims (Count I), which are not at issue on Perplexity's Motion to Dismiss ("Mot.," Tribune Dkt. 42, Times Dkt. 58).  The Motion addresses Plaintiffs' **output**-based direct infringement claim (Count II), contributory and vicarious infringement claims (Count III), and the Times Plaintiffs' trademark claims (Counts IV and V in the Times FAC).  All are legally deficient.

Count II fails because Perplexity does not perform the volitional conduct required when its answer engine provides answers to user queries via an automated process.  Plaintiffs argue that copying at the *input stage* in developing Perplexity's AI search technology—the alleged copying underlying Count I—satisfies this requirement.  But Plaintiffs identify no volitional conduct causing the automatic generation of an *output* by anyone other than themselves.  Plaintiffs also fail to plead (1) which copyrights are subject to Count II or (2) any allegedly "infringing acts" for all but 11 copyrighted works.  Plaintiffs contend they are "not required to plead all possible examples of Perplexity's infringing outputs."  Opp. 12.  But Plaintiffs must allege *at least one* infringing output for each work asserted in Count II.  They fail to do so.[1]

Count III fails because Plaintiffs do not allege facts establishing that Perplexity induced infringement (for contributory liability) or had a direct financial interest in infringement (for vicarious liability).  Plaintiffs incorrectly equate "the news"—i.e., unprotectable facts and ideas— with "infringing content."  Opp. 9, 22.  Perplexity's statements that it "provide[s] news" do not

---

[1] If not dismissed entirely, Count II of the FACs fails for all but 11 works.

encourage users to elicit *infringing* outputs or advertise an ability to infringe.  Opp. 18; *id.* at 21.

Plaintiffs fail to allege that Perplexity intended its users to request outputs copying expressive

elements of their news stories, or that it has any direct financial interest in such outputs.

Finally, Counts IV and V of the Times FAC should be dismissed because the Times fails

to plead examples of hallucinations or false attributions involving the Times' trademarks and to

sufficiently allege that Perplexity used any of the Times Plaintiffs' marks in connection with

commercial transactions, or that the "Wirecutter" and "The Athletic" marks are famous.

## II.    ARGUMENT

### A.    Plaintiffs Fail To State A Direct Infringement Claim Based On Outputs (Count II)

#### 1.    *Cablevision* Forecloses Plaintiffs' Claim

Plaintiffs concede, as they must, that "[t]o be liable for direct infringement, a defendant

must have engaged in volitional conduct that causes the copying or distribution."  Opp. 7.[2]  After

the input stage, Perplexity's answer engine only performs automated functions in response to user

requests.  *See, e.g.*, Tribune ¶¶ 41-42; Times ¶¶ 63-64.  Thus, under established Second Circuit

law, Perplexity does not "cause" the accused outputs.  Once a user enters a search, the answer

engine locates "relevant content" from the internet and automatically feeds it through its RAG

model to "generate a text output."  Tribune ¶ 41; Times ¶ 63.  For Plaintiffs' prompts engineered

to return infringing content, it is ***Plaintiffs***—not Perplexity—who directly cause creation of the

alleged infringing works.  As in *Cartoon Network LP v. CSC Holdings, Inc.* ("*Cablevision*"),

Plaintiffs "press[ed] the button" starting the automated process that resulted in the allegedly

infringing copies.  536 F.3d 121, 131 (2d Cir. 2008).

---

[2] Unless otherwise noted, internal quotations and citations omitted and emphasis added.

Plaintiffs argue *Cablevision* is "inapt" because Perplexity, not the user, "selects and copies Plaintiffs' copyrighted content" at the ***input*** stage.  Opp. 10-11.  According to Plaintiffs, Perplexity engaged in the requisite volitional conduct by "sen[ding] out crawlers" and making "copies of [copyrighted] content" to store in its index.  *Id.* 11 (citing Tribune ¶¶ 4, 41-42, 52-54 and Times ¶¶ 4, 62-64, 74-76).  But Cablevision also had "significant control over the content" recorded by its customers because it selected the channels available for copying.  *Cablevision*, 536 F.3d at 132.  And Plaintiffs' allegations of volitional conduct point exclusively to copies made at the input stage—copies underlying their separate ***inputs***-based Section 106(1) claim, ***not*** their ***outputs***-based Section 106(2) claim.  *Compare* Tribune ¶¶ 93, 95 with *id*. ¶¶ 105, 107; Times ¶¶ 128, 130 with *id.* ¶¶ 140, 142.  Plaintiffs cannot borrow the volitional conduct underlying Count I to supply the required volitional conduct for the separately-pleaded copies underpinning Count II.

Plaintiffs argue that the answer engine provides infringing responses "precisely because Perplexity built [that] system using Plaintiffs' content," and that this satisfies the volitional conduct requirement.  Opp. 6.  *Cablevision* forecloses this argument.  Even assuming the accuracy of that description (and putting aside that this conduct is addressed by Count I), copying at the input stage alone cannot support an output claim predicated on later copies—not when the but-for cause of the later copies is a third-party request.  In *Cablevision*, the defendant's "unfettered discretion in selecting the programming [inputs] that it would make available for recording" was not "sufficiently proximate to the [output] copying to displace the customer as the person who 'makes' the copies."  536 F.3d at 132.  In assessing whether Cablevision was liable for output copies requested by its customers, the Second Circuit focused on Cablevision's conduct ***at the time the allegedly infringing copy was made***, not its earlier conduct in *selecting* the programming that

3

could be copied by its customers. *Id.* Cablevision's conduct was different than that of a video-on-demand provider, which "actively selects and makes available ***beforehand*** the individual programs available for viewing." *Id.*

The question under *Cablevision* is not whether Perplexity *ever* engaged in volitional conduct. It is whether Perplexity engages in volitional conduct that is "sufficiently proximate" to the creation of infringing ***outputs*** such that Perplexity, not the user, "makes" those copies.[3] Perplexity does not. Perplexity's "control" over RAG content is confined to input copies—the online equivalent of *Cablevision's* channels—not the output copies automatically generated based on the specific queries supplied by Plaintiffs. Tribune ¶ 3 (Perplexity "accesses as much content as it can from the Chicago Tribune and other ***sources*** of trusted, original, and reliable information"); Times ¶ 3 (similar); Tribune ¶ 54 (responses "are supported by citations from reputable news organizations, academic publications, and established content ***sources***"); Times ¶ 76 (similar).

Plaintiffs argue that Perplexity's answer engine is like "a juke box pre-loaded with unauthorized copies of copyrighted songs," Opp. 11, but they never allege that Perplexity selects individual works supporting its RAG system, rather than the online sources whose "channels" are indexed, or that Perplexity prewrites infringing outputs before users enter any of infinite potential prompts. Plaintiffs are therefore wrong that Perplexity's service is "more akin" to the software in *EMI Christian Music Group, Inc. v. MP3tunes, LLC* because "Perplexity, not the user, . . . selects and copies Plaintiffs' copyrighted content." Opp. 11. In *MP3tunes*, the system's retrieval of album

---

[3] The Second Circuit noted "Cablevision's conduct in designing, housing, and maintaining a system that exists only to produce a copy" was volitional conduct, but was not the conduct that "cause[d] the copy to be made." *Cablevision*, 536 F.3d at 131. The conduct that was "sufficiently proximate" to creating an infringing work was the "customer's conduct in ordering that system to produce a copy of a specific program." *Id.* That is exactly the case here.

artwork was not performed in response to a user request.  It automatically retrieved artwork "that *a user did not request*" whenever a user uploaded a song.  844 F.3d 79, 96 (2d Cir. 2016).  It was therefore MP3tunes whose conduct was sufficiently proximate to creating the infringing copies of album artwork.  In contrast, Perplexity's alleged conduct ("buil[ding] its system using Plaintiffs' content," Opp. 6) is *not* sufficiently proximate to the accused outputs, which were the direct, automated result of goading prompts devised and entered by *Plaintiffs*.  Mot. 12.

Plaintiffs claim they provided "specific examples" of infringement "without a user specifically requesting Times or Tribune content."  Opp. 11.  But in each of those two examples, Plaintiffs queried on a news topic intended to elicit specific content, requesting "quotes from the reporting in detail," Tribune ¶ 65, or "exact passages," Times ¶ 92.[4]  That Plaintiffs did not type "New York Times" or "Chicago Tribune" hardly shows the answers did not occur automatically in response to their crafted prompts.  *All* of Plaintiffs' alleged "verbatim reproductions," Tribune ¶ 59; Times ¶ 82, resulted from an automated process in response to Plaintiffs' specific, targeted commands.  Because Plaintiffs' allegations uniformly involve instances where they deliberately engineered allegedly infringing outputs, the Court need not decide whether Perplexity would be directly liable if its answer engine reproduced copyrighted material absent Plaintiffs' intervening volitional conduct.  Under *Cablevision*, Plaintiffs—not Perplexity—were the but-for cause of allegedly infringing outputs.

Undeterred, Plaintiffs argue that, where "software systems . . . provid[e] the infrastructure" for delivering copyrighted content, that constitutes sufficiently proximate volitional conduct.  Opp. 7.  That unsupported assertion contradicts *Cablevision*.  536 F.3d at 131-32 (holding that

---

[4] These examples also cannot support Count II because Plaintiffs do not identify any registered copyright for the referenced articles, thus failing to properly plead an infringement claim for either one.  *See* Mot. 14 n.5.

"designing, housing, and maintaining a system" for creating copies was insufficient to "displace the customer as the person who 'makes' the copies"). Plaintiffs' other cited cases are inapt. Opp. 8-9. The defendants in *Capitol Records, LLC v. ReDigi Inc.* and *Fox News Network, LLC v. TVEyes, Inc.* selected *specific content* to power products designed to facilitate infringement. 934 F. Supp. 2d 640 (S.D.N.Y. 2013); 883 F.3d 169 (2d Cir. 2018). In *ReDigi*, defendants "programmed their software to ***choose copyrighted content***" by "scan[ning] a user's computer to build a list of eligible files that consists ***solely*** of protected music." 934 F. Supp. 2d at 657. In *TVEyes*, the defendant allowed users to search for and watch clips of television shows ***it*** recorded without user prompting. 883 F.3d at 176, 181 (distinguishing *Cablevision* because the *defendant* "decide[d] what audiovisual content to record, copie[d] that content, and retain[ed] it for thirty-two days"). Perplexity does not choose the contents of any output. Rather, it gathers content from a broad array of sources (at the input stage) to enable its search engine to generate automated responses to user inquiries—much like Cablevision, whose actions at the output stage were legally insufficient to "displace the customer as the person who 'makes' the copies." 536 F.3d at 132.

*New York Times Co. v. Microsoft Corp.* is inapposite. Plaintiffs argue it is "instructive" because it "address[ed] the functionality of similar GenAI products." Opp. 11. But Judge Stein addressed a *contributory* infringement claim, which is predicated on third-party volitional conduct. 777 F. Supp. 3d 283, 305 (S.D.N.Y. 2025). That volitional conduct requirement supplies an "analytic framework ***to draw a boundary*** between direct liability and secondary liability." 4 Nimmer on Copyright § 13E.09 (2025). Where a service provider ***lacks*** volitional conduct tied to an accused output, the proper framework is secondary liability. *See Cablevision*, 536 F.3d at 132–33. That the *Microsoft* plaintiffs brought their output claims under a secondary liability theory supports Perplexity's argument, not Plaintiffs'.

### 2. Plaintiffs Fail To Plead Any Facts For Virtually All Registered Copyrights

Perplexity is not proposing "a new pleading standard" requiring Plaintiffs to allege "every single example of every single instance of infringement." Opp. 12-13. It is holding Plaintiffs to the minimum pleading standard for stating each factually distinct claim they chose to bring. Plaintiffs must allege *which* works are subject to each claim and *by what acts* they have a Rule 11 basis to allege that Perplexity infringed each of them. *Stevens v. Tomlin*, No. 23-cv-5898 (PKC) (LB), 2023 WL 5486247, at *2 (E.D.N.Y. Aug. 24, 2023); Opp. 13 (citing similar standard). Plaintiffs fail that standard for all but 11 asserted works.

Plaintiffs argue they "surpass the bar for stating a claim" by alleging "how Perplexity infringed their copyrighted works" and providing "many specific examples." Opp. 12-13 (emphasis removed). But they do not allege, even in a conclusory manner, that *any* user elicited *any* infringing output for all but 11 of the millions of works in their Exhibits A. Plaintiffs allege only that "Perplexity has unlawfully copied millions" of articles at the *input* stage and that outputs "***often*** contain verbatim reproductions" or "are reworded into text that closely **paraphrases** or **summarizes**" those works. *Id.* at 13-14 (citing Tribune ¶¶ 6, 59; Times ¶¶ 5, 82). Those allegations do not provide notice of which works are asserted in Count II or III, or how any output has purportedly infringed them.

Plaintiffs argue that they "attached to their FACs lists of the works that Plaintiffs allege have been copied and infringed." *Id.* 14. But both FACs are silent as to whether every work in Exhibit A is asserted in Counts II and III, as opposed to just Count I. While Plaintiffs allege Perplexity "copied as many of the [Plaintiffs'] articles and content . . . as inputs into database(s) or index(es), *including content covered by the registrations listed at Exhibit A*" (i.e., the copying at issue in Count I), Tribune ¶ 102; Times ¶ 137, the allegations of output copying do not reference

7

Exhibit A.  Plaintiffs allege only that some outputs "contain and/or are derived from [Plaintiffs'] copyrighted content, whether they come in the form of verbatim or near-verbatim reproductions" or other "derivative content."  Tribune ¶ 105; Times ¶ 140.[5]

The absence of specific allegations for all but 11 works is critical because Plaintiffs must plead substantial similarity with "some degree of specificity."  Mot. 13.  Plaintiffs argue substantial similarity "cannot be addressed without the aid of discovery."  Opp. 13.  But Plaintiffs provide *no* work-specific allegations for most works.  As their own cases hold, "broad, sweeping allegations of infringement" do not comply with Rule 8.  *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 340 (S.D.N.Y. 2015) (cited in Opp. 14-15).  Courts routinely dismiss similarly sweeping copyright claims.  *See, e.g.*, *Psychic Readers Network, Inc. v. A&E Television Networks, LLC*, No. 24-cv-8155 (DEH), 2025 WL 2532292, at *3 (S.D.N.Y. Sept. 3, 2025); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230-31 (S.D.N.Y. 2000); *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (DF), 2012 WL 3133520, at *13-14 (S.D.N.Y. Aug. 1, 2012).

At a minimum, Plaintiffs were required to specify which works they are asserting in Counts II and III and in what manner Perplexity allegedly infringed them (i.e., via "verbatim" outputs or otherwise).  *See Larball Publ'g Co., Inc. v. Lipa*, No. 22-cv-1872 (KPF), 2023 WL 5050951, at *6 (S.D.N.Y. Aug. 8, 2023) (plaintiff must "plead the elements of infringement as to each" asserted work).  If not dismissed entirely, Count II should be dismissed as to all works for which Plaintiffs fail to allege an infringing output.

---

[5] Should Plaintiffs argue that *any* output "using" their content constitutes an infringing derivative, that argument has been rejected in other AI copyright cases. *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023) (dismissing output claim for failing to plead substantial similarity); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024) (same).  Plaintiffs must allege that Perplexity's outputs are substantially similar to each asserted copyrighted work. *Tremblay*, 716 F. Supp. 3d at 778.

#### B.    Plaintiffs Fail To State A Secondary Liability Claim (Count III)

##### 1.    Contributory Liability

Plaintiffs concede that under *Cox Communications, Inc. v. Sony Music Entertainment*, they must allege facts demonstrating that Perplexity either (1) induced infringement or (2) provided a service tailored to infringement. Opp. 16. They do not allege the latter. Mot. 19-20. Plaintiffs argue they have pleaded inducement because (1) "Perplexity's marketing emphasized that one of its core functions is to provide news"; and (2) "Perplexity was aware of substantial infringement by its users" and its "business model relies on attracting a high number of users." Opp. 18-20. Neither suffices.

First, Plaintiffs improperly equate "providing news" with providing allegedly infringing content. They ***do not*** allege any example of Perplexity "express[ly] promot[ing]" or "marketing" its answer engine for *infringing* uses. *Cox*, 146 S. Ct. 959, 968 (2026). Instead, they allege that Perplexity marketed its services as providing responses using *information* "from authoritative sources like articles." Opp. 18. But no news provider owns the factual "information" in its articles. *See Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 354 (1991) ("[T]he news element—the information respecting current events contained [in a news article]—is not the creation of the writer, but is a report of matters that ordinarily are *publici juris*" and not copyrightable). Plaintiffs also ignore that their allegations about Perplexity's "Publishers' Program" render *Advance Loc. Media LLC v. Cohere, Inc.*[6] inapposite and render implausible the inference that Perplexity intends to induce infringement by advertising its products' ability to "provide news." *See* Mot. 18-19, n.7; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (allegations that have "obvious alternative explanation" not plausible). As Plaintiffs allege, Perplexity has "licensing

---

[6] Cases cited in earlier briefs are occasionally cited by name only. *See infra* at 15 & n.9.

deals with certain publishers," who will "earn a share" of Perplexity's revenue from "interaction[s] where a publisher's content is referenced" in outputs.  Tribune ¶ 87; Times ¶ 122.

Plaintiffs' argument that marketing statements about "news" *could* encourage infringing uses is immaterial; what matters is whether those statements were "*designed*" for that purpose.  *Hikma Pharms. USA v. Amarin Pharma, Inc.*, 608 U.S. ___, 2026 WL 1593307, at *7 (June 4, 2026) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)).  To the extent *Cox* did not put the nail in Plaintiffs' inducement claim, *Hikma* does.  Relying on controlling copyright precedent, the *Hikma* Court held that a plaintiff fails to plausibly allege "active steps" to induce patent infringement based on "vague statements combined with speculation about how [third-parties] may act in response to those statements."  *Id.* at *6, 8.  To state an inducement claim, a plaintiff must allege "clear," "affirmative," and "overt efforts to entic[e] or persuad[e] another to engage in copyright infringement" sufficient to "overc[ome] the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use."  *Id*. at *7.  Plaintiffs fail to meet that standard. They do not allege Perplexity marketed its products to encourage infringing outputs or designed its marketing for that purpose.

*Second*, Plaintiffs never allege that Perplexity was "aware of substantial infringement by its **users** and yet continued to encourage this infringement."  Opp. 19.  Plaintiffs' cease-and-desist letters, even as alleged, contain no reference to **user** infringement.  *Id.* (citing allegations that "The Times notified Perplexity of its concern that *Perplexity* was using the Times's intellectual property without permission" and that MNG requested assurance that its "proprietary content has not been and is not being used *by Perplexity*"); *see also* Tribune Dkt. 35-1 (MNG letter); Times Dkt. 36-16 to 36-19 (Times letters).  Regardless, inaction in the face of infringement by some users is not inducement.  *See Cox*, 146 S. Ct. at 968-69 ("[C]ontributory liability cannot rest only on a

10

provider's knowledge of infringement and insufficient action to prevent it"); *Hikma*, 2026 WL 1593307 at *8 (plaintiff "may not rely on mere omissions, inactions, or nonfeasance to allege active inducement"). Plaintiffs therefore cannot rely on Perplexity's post cease-and-desist-letter operation to allege inducement. Their assertion that "Perplexity's business model relies on attracting a high number of users to its products, which are infringing," Opp. at 19-20, similarly misses the mark. *See Hikma*, 2026 WL 1593307, at *6 ("[O]rdinary acts incident to product distribution are insufficient to support [inducement] liability").[7] Plaintiffs' contributory infringement claims should be dismissed.

### 2.    Vicarious Liability

Plaintiffs' vicarious infringement claim fails because they do not plausibly allege Perplexity has a direct financial interest in infringement by its users. Mot. 20-22. Plaintiffs claim Perplexity "draws" consumers by advertising its ability to provide "high-quality news content from reliable sources." Opp. 21. Once again, Plaintiffs improperly equate "news content" with allegedly infringing content. They nowhere grapple with Perplexity's argument that advertising responses "based on" news content is not the same as *infringing copies* of Plaintiffs' articles. *See* Mot. at 21-22. Even if Perplexity advertises the answer engine's ability to "streamlin[e]" information gathering by "delivering the precise knowledge you need without the extra steps and clicks" based on "high-quality news content," that does not plausibly show users are drawn to Perplexity to **make infringing copies** of Plaintiffs' content. *See White v. DistroKid*, 738 F. Supp. 3d 387, 402 (S.D.N.Y. 2024) (dismissing vicarious liability claim where "complaint provides no

---

[7] Plaintiffs rely exclusively on *Arista Recs. LLC v. Lime Grp. LLC* to support this argument. That case is inapt. LimeWire ran advertisements that "promoted LimeWire with direct references to other infringement fostering programs" like Napster and Kazaa. 784 F. Supp. 2d 398, 427-28 (S.D.N.Y. 2011). Perplexity is not a product designed to facilitate sharing copyrighted files—it is a "research tool" competing with "other search engines" in the market. Tribune ¶ 47; Times ¶ 69.

11

facts showing" that users "are 'drawn' to [defendant's] platform in order to engage in or profit from copyright infringement").

Plaintiffs also do **not** allege that "users are more likely to purchase a paid Perplexity plan, or use the free product more, if they obtain the high-quality news content they were promised." Opp. 22. Their only cited allegation states that "Perplexity . . . offers paid plans" with "deeper sourcing from Perplexity's index" and other features. Tribune ¶ 5; Times ¶ 6. Plaintiffs allege no facts establishing a causal nexus between Perplexity's subscription revenue and purported third-party infringement. *See DistroKid*, 738 F. Supp. 3d at 402. Plaintiffs' reliance on *MP3tunes* is again misplaced. There, the defendant's financial model was built on attracting users through the availability of infringing content. 844 F.3d at 86. Perplexity's business model is built on providing a general-purpose search engine that synthesizes information from countless sources. *See* Tribune ¶ 47; Times ¶ 69. Plaintiffs do not plausibly allege that users subscribe to Perplexity *because* it provides allegedly infringing copies of Times or Tribune articles.[8] Count III should be dismissed.

## C.    The Times Plaintiffs Fail To Allege Viable Trademark Claims (Counts IV-V)

The Times Plaintiffs' opposition does not meaningfully address the trademark issues raised by Perplexity. The Times Plaintiffs assert their claims are adequately pleaded because they plead "all elements" of the claims. Opp. 22. Reciting the elements does not suffice. As the Supreme Court unanimously reaffirmed in *Hikma*, the "familiar" pleading standards of *Twombly* and *Iqbal* require a plaintiff to "plead **facts** that, if true, 'allo[w] the court to draw the reasonable inference

---

[8] The Tribune's vicarious infringement claim should be dismissed for another reason: the Tribune fails plausibly to allege that Perplexity has a direct financial interest in infringement of **Tribune content** specifically. As Perplexity raises in its Motion, Paragraph 116 of the Tribune FAC refers repeatedly to Times content and **does not mention** Tribune content at all. Mot. 22 n.10. By not responding to this argument, Plaintiffs waive their opposition to it. *See Pasuarello v. Crothall Healthcare, Inc.*, No. 21-cv-08732 (JLR), 2023 WL 5714165, at *8 n.3 (S.D.N.Y. Sept. 5, 2023).

that the defendant is liable for the misconduct alleged.'" *Hikma*, 2026 WL 1593307, at \*6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009)). The Times Plaintiffs have not pleaded sufficient facts supporting reasonable inferences that (a) Perplexity's products have generated hallucinations or incomplete content incorrectly attributed to The Times, (b) Perplexity has used the Times Plaintiffs' marks in connection with commercial transactions, or (c) either "Wirecutter" or "The Athletic" is a household name widely recognized by "the general consuming public of the United States." Their trademark claims therefore fail.

First, the Times Plaintiffs acknowledge they did not plead any examples of hallucinations that misattribute content to the Times, and concede they included only examples that "falsely attributed" content to Wirecutter and The Athletic. Opp. 22-23, 25. And they complain that requiring at least one such example would "impose a new pleading standard" that would be "absurd." Opp. 23. The Times Plaintiffs are wrong.

A plaintiff seeking to assert a trademark claim must provide a factual basis for the claim. Claims supported by ***no examples*** of the alleged infringement are frequently dismissed in this District. In *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL 696126, at \*14, \*21-22 (S.D.N.Y. Feb. 15, 2017), the court dismissed the trademark claims against defendant Infomir, for which plaintiffs provided no examples of the claimed infringement, but allowed the claims to proceed against defendant Goodzone, for which plaintiffs provided an exhibit of a website displaying their logos. The court reached a similar result in *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 CIV. 0790 KBF, 2012 WL 2497276, at \*2-4 (S.D.N.Y. June 22, 2012), in which the plaintiff failed to support speculative and conclusory allegations, coupled with a "[t]hreadbare recital" of the claim elements, with specific factual allegations of infringement. This rule applies to each mark asserted and each defendant named. *Solid 21, Inc. v. Richemont N. Am.,*

13

*Inc.*, No. 19-cv-1262 (LGS), 2020 WL 3050970, at *3 (S.D.N.Y. June 8, 2020) (claims against Panerai AG dismissed while claims against other defendants, for which plaintiff provided specific examples of products and advertisements, proceeded); *compare Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 903 (S.D.N.Y. 2016) (denying motion to dismiss where plaintiff provided specific examples of allegedly infringing conduct).

The Times Plaintiffs concede that their trademark claims are premised on the assertion that "Perplexity uses The Times's trademarks in connection with the output of *fake articles that falsely identify The Times* as the source," Opp. 22, and do not contest that every example of The Times' marks (rather than the "Wirecutter" or "The Athletic" marks) in the FAC is a nominative fair use. Opp. 24-25. Without a single example of infringing or diluting use of The Times' trademarks, the trademark claims asserted by The Times are deficient—and speculative and conclusory allegations do not cure that deficiency. *See Hikma*, 2026 WL 1593307, at *6 (pleading a mere possibility is insufficient).

Second, the Times Plaintiffs sidestep Perplexity's "use in commerce" arguments by ignoring their substance. Opp. 23-24. Plaintiffs illogically argue that Perplexity's use of Plaintiffs' marks to accurately identify Plaintiffs as the source of information provided by Perplexity constitutes use in commerce because of its effect, i.e., that it allegedly "would 'likely to divert [sic] traffic, sales, and subscriptions from [plaintiffs].'" Opp. 24. Plaintiffs do not even attempt to point to *any* use by Perplexity of Plaintiffs' marks in advertising materials like the use that was dispositive to Judge McMahon in the *Cohere* case. Plaintiffs acknowledge that the applicable "in commerce" test is whether Perplexity displayed Plaintiffs' trademarks "to consumers in connection with a commercial transaction." Opp. 23. But their conclusory allegations cite no examples of such displays for any asserted mark, which is a fatal flaw in all their trademark claims.

14

Third, Plaintiffs' skeletal argument about the numerous irrelevant trademark registrations pleaded in the FAC, *see* Mot. 29, is equally facile. Plaintiffs assert their FAC is sufficient because they allege, without elaboration or supporting facts, that unidentified "unlawful actions" by Perplexity "create a likelihood of confusion and dilution." Opp. 25-26. According to Plaintiffs, a trademark plaintiff need only identify registrations it owns and claim that the defendant is causing a likelihood of confusion or dilution, without explaining how or providing examples of infringing or diluting uses. As the cases above establish, that is not the law.

Fourth, Plaintiffs strive to defend their allegations that "Wirecutter" and "The Athletic" are famous marks for purposes of the federal dilution statute, which protects only "household names" like NIKE, GOOGLE and COCA-COLA. *See* Mot. 30-33. Under the pleading standards applied in this District on dilution,[9] they have not plausibly alleged that either mark is famous.

All of Plaintiffs' fame-related allegations regarding "Wirecutter" and "The Athletic," Times ¶¶ 47-48, describe recognition within a specific field rather than the "general consuming public," *see* 15 U.S.C. § 1125(c)(2)(A), and are devoid of the specific, quantified allegations needed to adequately plead fame. They are like the conclusory allegations found insufficient by Judge Stein in *OpenAI* for CNET and PCMag (among other publications), by Judge Roman in *CDC Newburgh*, and by Judge Stanton in *Luv N' Care*. They also fall short of the detailed factual evidence regarding sales and advertising expenditures that the Second Circuit found insufficient even under the more lenient, pre-TDRA standard in *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99-100 (2d Cir. 2001). Plaintiffs provide no allegations detailing metrics such as advertising spend, revenues, national media outlets, or cross-platform commercial presence for the

---

[9] Plaintiffs cite two cases (Opp. 28) from 2000 and 2004, *GMA Accessories* and *Lewittes*, that predate the 2006 amendments to the dilution statute and are therefore no longer good law.

15

"Wirecutter" and "The Athletic" marks specifically, as opposed to allegations regarding the reach of The Times' mobile applications and websites.  *See* Times ¶¶ 47-48; *Luv N' Care*, 841 F. Supp. 2d at 757, 759 (fame allegations must relate to specific marks in suit).  Their allegations that "Wirecutter" and "The Athletic" are household names are therefore implausible and illogical.

The Times Plaintiffs seek to avoid these deficiencies by improperly combining two Lanham Act causes of action in a single count (Count IV), thus avoiding scrutiny of the different elements and allegations needed to support each.  The Times Plaintiffs have already amended their defective trademark claims once.  Those claims should be dismissed without leave to further amend.  In the event amendment is permitted, the Times Plaintiffs should be required to assert their Section 43(a), 43(c) and 32(1) claims in separate counts.

## III.    CONCLUSION

Perplexity requests that the Court dismiss Counts II and III of both FACs, and Counts IV and V of the Times FAC.

16

Dated:  June 9, 2026                                    Respectfully submitted,

**KING & SPALDING LLP**                    **LATHAM & WATKINS LLP**

/s/ *Bruce W. Baber*                             /s/ *Joseph R. Wetzel*
Bruce W. Baber (*admitted pro hac vice*)[10]      Joseph R. Wetzel
1180 Peachtree Street, NE                   Andrew Gass (admitted *pro hac vice*)
Suite 1600                                  Brett M. Sandford (admitted *pro hac vice*)
Atlanta, Georgia 30309                      505 Montgomery Street
Telephone: 404-572-4600                     Suite 2000
bbaber@kslaw.com                            San Francisco, CA 94111-6538
                                            Tel: 415.391.0600
                                            joe.wetzel@lw.com
Kathleen E. McCarthy                        andrew.gass@lw.com
Jackie Fugitt                               brett.sandford@lw.com
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone: 212-556-2100                     Sarang V. Damle
kmccarthy@kslaw.com                         Cory D. Struble
jfugitt@kslaw.com                           1271 Avenue of the Americas
                                            New York, NY 10020
                                            Tel: 212.906.1200
Neel Chatterjee (*admitted pro hac vice*)    sy.damle@lw.com
245 Lytton Avenue, Suite 150                cory.struble@lw.com
Palo Alto, California 94301
Telephone: 650-422-6700
nchatterjee@kslaw.com                       *Attorneys for Defendant Perplexity AI, Inc.*
                                            in Case No. 1:25-cv-10094-LAP

*Attorneys for Defendant Perplexity AI, Inc.*
in Case No. 1:25-cv-10106-LAP

---

[10] Perplexity uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's
ECF Rules and Instructions.

## **CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 2.B. of the Court's Individual Rules of Practice in Civil Cases, and the Court's Orders at Dkt. 39, No. 1:25-cv-10094, and Dkt. 56, No. 1:25-cv-10106, because it contains 4,992 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated: June 9, 2026                                  */s/ Joseph R. Wetzel*
                                                     Joseph R. Wetzel