Corrected version replacing Times Dkt. 83 in 25-cv-10106 and Tribune Dkt. 67 in 25-cv-10094.

ROTHWELL FIGG

901 New York Avenue, N.W.
Suite 900 East
Washington, DC 20001

Telephone (202) 783-6040
Facsimile (202) 783-6031
www.rothwellfigg.com
info@rothwellfigg.com

Offices in Washington, D.C. | New York | Boston

G. Franklin Rothwell (1928-2011)
Harry F. Manbeck, Jr. (1926-2025)

E. Anthony Figg
Steven Lieberman
Joseph A. Hynds
R. Danny Huntington
Joo Mee Kim
Brian S. Rosenbloom
Jennifer P. Nock
Brett A. Postal
Aydin H. Harston, Ph.D.
Jennifer B. Maisel
Richard Wydeven
Sharon L. Davis
Robert P. Parker
Jenny L. Colgate
Leo M. Loughlin
Michael V. Battaglia
Michael H. Jones
Rachel M. Echols
Daniel L. Shores

*Not a member of the D.C. Bar. Practice limited to patent, trademark and copyright matters and cases in federal courts.

Mark T. Rawls
Nicole M. DeAbrantes
Davide F. Schiavetti
Vivian Y. Tian
Kristen J. Logan
Sheena X. Wang
Gary J. Prato
Bryan B. Thompson
Adam M. Nicolais
Gregory S. DeLassus
Michael P. Ellenberger
Mary L. Mullins
Stephanie E. Waltersdorff
Benjamin H. Fishman
Jotham Koneri
Deton Lier*
Thomas R. Langdon
Kenneth O. Aruda

Of Counsel
Alexandra S. Hughes
Hugham Chan

November 3, 2026

Hon. Loretta A. Preska
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Chicago Tribune Co., LLC v. Perplexity AI, Inc.*, No. 1:25-cv-10094; *New York Times Co. v. Perplexity AI, Inc.*, No. 1:25-cv-10106

Dear Judge Preska:

We are requesting an informal conference. At the January 5, 2026 conference, this Court made clear that the parties should try to resolve discovery disagreements among themselves and that the Court hoped, and expected, that it would not be presented with many disputes. Despite Plaintiffs' diligent efforts, two fundamental (and long-simmering) disputes with Perplexity require this Court's attention.

*First*, Perplexity's user activity log ("UAL") snapshots contain direct evidence of Perplexity's infringing conduct and have not been produced. Perplexity has already made UAL snapshots available for inspection in the *Encyclopaedia Britannica*, 1:25-cv-07546 (S.D.N.Y.), and *Dow Jones & Company, Inc.*, 1:24-cv-07984 (S.D.N.Y.), cases, yet refuses to do so here unless Plaintiffs pay exorbitant costs.

*Second*, Perplexity refuses to produce discovery concerning training using Plaintiffs' content, despite its relevance to Plaintiffs' claims and Perplexity's willful copying of Plaintiffs' content. At the same time, Perplexity has refused to confirm whether it used Plaintiffs' content for training.

Perplexity's position on both topics is contrary to the law, and Plaintiffs seek an order compelling discovery.

***User Activity Log Costs***

As Perplexity explained in *Britannica*, its "answer engine depends on two core data systems": the Retrieval Augmented Generation ("RAG") Database containing copies of the websites Perplexity scraped and the UAL Database containing interactions between Perplexity and its users. Ex. A (Dkt. No. 96-1 (Ma Decl.) ¶ 4). For every user interaction, the UAL Database records, *inter alia*: (1) the user's query; (2) prior conversation history; (3) how the answer engine processed the query, including what content was copied in order to provide a response; and (4) the final output. Ex. B (*Dow Jones* Dkt. No. 114 (Yarats Decl.) ¶ 4). UAL data is thus among the most important evidence of the scope and frequency of Perplexity's infringement. Perplexity itself cites this data in response to multiple requests for production. *See, e.g.*, Ex. C (Rizzuto Sept. 25, 2026 email).

For more than nine months, Perplexity has refused to produce the UAL data, conditioning inspection of this critical data on a cost-shifting agreement whose terms it refuses to define. *See Times* Dkt. No. 32 at 2. Only last week, after repeated requests went unanswered, Perplexity provided the following cost estimates:

- **May 2024 through May 2025:** at least $12,000 per month
- **August 2025 through January 2026 (estimate):** at least [redacted] per month
- **February 2026 through September 2026 (estimate):** at least [redacted] per month[1]

Ex. D (Rizzuto Oct. 23, 2026 email).

The default rule is that the producing party bears the cost of complying with discovery requests. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). The responding party bears the burden of proving "good cause" for cost-shifting. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003).

---

[1] Although Plaintiffs have requested an additional snapshot, this motion is limited to costs associated with the May 2024 through May 2025 and August 2025 through January 2026 snapshots.

Perplexity cannot carry that burden; each relevant factor confirms cost-shifting is unwarranted. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003). *First*, the request is "specifically tailored to discover relevant information," goes to the heart of "the issues at stake," and benefits both parties. *Id.* *Second*, the UAL data is in Perplexity's sole possession and unavailable from "other sources." *Id.* *Third*, given "the amount in controversy," Perplexity's resources, and its sole ability "to control costs," Perplexity should bear the cost. *Id.*

The May 2024 through May 2025 and August 2025 through January 2026 snapshots have already been created and/or made available for inspection in *Dow Jones* and/or *Britannica*, so Perplexity knows the associated costs. Yet it refuses to disclose any specifics. *See* Ex. D (Hughes Oct. 30, 2026 email). Such disclosure is especially necessary given Perplexity's inconsistent estimates in *Britannica*, where Judge Cave noted "the orders-of-magnitude difference between the $12,000 to $14,000 per month Perplexity previously quoted . . . and the hundreds of thousands of dollars Perplexity now calculates, **and thus view[ed] the latter with considerable skepticism**." Ex. E (Dkt. No. 114 at 12 (emphasis added)). Judge Cave ordered Britannica to contribute only $6,000 per month. *Id.* at 13.

Perplexity, reportedly valued at more than $30 billion, can afford this cost and should bear all costs of producing these two snapshots.

***Training, Post-Training, and Fine-Tuning***

Perplexity refuses any discovery into its use of Plaintiffs' content to train, post-train, or fine-tune its models, asserting Plaintiffs do not allege such use. Ex. F (Rizzuto Oct. 23, 2026 email). Perplexity is wrong.

*First*, paragraph 40 of the FACs alleges, based on Perplexity's own public statements, that Perplexity fine-tuned its Sonar LLMs to support "real world use cases" such as "[b]rowsing news"—that is, content like Plaintiffs'. Paragraph 66 further alleges that Perplexity's proprietary "Sonar" family of LLMs are "open-source models that Perplexity fine-tuned to optimize for RAG."

*Second*, Plaintiffs' claims target both the input stage (crawling and scraping Plaintiffs' content, *Tribune* FAC ¶ 52) and the output stage (verbatim reproductions, *id.* ¶ 59). Training discovery bears on both.

Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance "is an extremely broad concept." *A.I.A. Holdings S.A. v. Lehman Bros.*, 2000 WL 763848, at *2 (S.D.N.Y. June 12, 2000). Courts in this District have refused to limit copyright discovery based on the absence of an allegation regarding a particular mode of use. *See, e.g.*, *Jose Luis Pelaez, Inc. v. Scholastic Inc.*, 2017 WL 4776993 (S.D.N.Y. Oct. 19, 2017); *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 244 F.R.D. 271 (S.D.N.Y. 2007).

Plaintiffs offered to "forgo [training requests] if Perplexity represents in a sworn declaration that it does not use and has never used Plaintiffs' Content to . . . train these models." Ex. G (Hughes Oct. 7, 2026 email). Perplexity refused. Plaintiffs therefore respectfully request that this Court order Perplexity to provide discovery regarding its use of Plaintiffs' content, including to train, post-train, or fine-tune its models.

Respectfully submitted,

*/s/ Steven Lieberman*
Steven Lieberman
*Counsel for Plaintiffs*

The parties shall appear for a discovery conference in Courtroom 12A on November 12, 2026 at 11:00 AM. Any opposition letter shall be filed by November 6 and any reply shall be filed by November 10. Any party seeking to appear via teleconference must obtain permission from the Court.

**SO ORDERED.**

Loretta A. Preska

Loretta A. Preska
Senior United States District Judge

November 5, 2026